# 97 DTA 173

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL II DE BAYAMON

ASOCIACION DE RESIDENTES DE PARK SIDE, INC.,
MANTENIMIENTO DEL CONDOMINIO SAN PATRICIO I, CONDOMINIO SAN PATRICIO II
Y CORPORACION DE LA COMUNIDAD SAN PATRICIO
Recurrentes

v.

JUNTA DE PLANIFICACION DE PUERTO RICO Y COMPAÑIA TELEFONICA DE PUERTO
RICO (PUERTO RICO TELEPHONE COMPANY)
Recurridas

San Juan, Puerto Rico, a 4 de agosto de 1997

Panel integrado por su Presidenta, la Jueza Ramos Buonomo
y los Jueces González Román y Córdova Arone

Córdova Arone, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

La Asociación de Residentes de Park Side, Inc., y otros (en lo sucesivo la Asociación) solicitan que revoquemos la resolución emitida por la Junta de Planificación (la Junta) el 22 de mayo de 1996 en la consulta de ubicación número 94-16-0718-JGU (quinta extensión). Mediante la referida resolución, la Junta aprobó la consulta de ubicación y autorizó a la Compañía Telefónica de Puerto Rico *("la Telefónica")* a construir un edificio que incluye un estacionamiento multipisos y unas facilidades multiusos, tal como un salón para asambleas y un gimnasio.

Nos señala la Asociación que la Junta cometió los siguientes errores al emitir su resolución:

*"a. Erró la Junta al actuar de forma arbitraria, prejuiciada e irrazonable, violando el derecho al debido procedimiento de ley de los residentes.*

*b. Erró la Junta al autorizar variaciones en uso en el solar R-3 objeto de la consulta de ubicación a pesar de no evidenciarse circunstancias extraordinarias que justificaran dichas variaciones.*

*c. Erró la Junta al determinar que el edificio multipisos construido en el solar no requiere una variación en uso.*

*d. La conclusión de la Junta de que el edificio multiusos no afectará la situación de tránsito, el ruido y la contaminación ambiental no está apoyada por la evidencia que surge del récord administrativo.*

*e. Erró la Junta al aprobar lo que en efecto constituye una rezonificación sin que se haya cumplido con los requisitos establecidos en la ley y los reglamentos.*

*f. Erró la Junta al concluir que el proyecto propuesto por la Telefónica cumple con el plan de usos de terrenos y satisface los criterios de un desarrollo extenso."*

Luego de evaluar tanto la solicitud de revisión, como los documentos presentados por las partes y el derecho aplicable, se expide el auto y se confirma la resolución recurrida.

**II**

Los hechos que originan las controversias ante nos son las siguientes:

Para el año 1994 la Compañía Telefónica de Puerto Rico *("la Telefónica")* presentó ante la Junta una consulta de ubicación y solicitud de variación para la ubicación de un proyecto institucional que consiste en la construcción de un estacionamiento multipisos para 658 vehículos y salón de usos múltiples, gimnasio y enfermería para los empleados de dicha compañía. El predio objeto de consulta tiene una cabida 1.68 cuerdas y radica en la Calle Park Side número 1 de la Urbanización Park Side en el Barrio Pueblo Viejo de Guaynabo. El mismo está delimitado por el norte, con la Calle Park Side, con la Calle Park Side 2; por el sur, con los Condominios Torres San Patricio I y II; por el este, con la Calle Park Side número 1 y por el oeste con varios colindantes.

El área donde esta localizado el edificio de las oficinas centrales de la Telefónica está subdividida en lotes con diferentes clasificaciones de zona. Por ello, la discusión del proyecto incluyó una posible enmienda al mapa de zonificación de Guaynabo. Uno de los solares está destinado al uso residencial, zonificado bajo la clasificación R-3, mientras otro está limitado a ciertas actividades comerciales con clasificación C-2. La referida enmienda sería para la porción de los terrenos que ubican en el distrito R-3. La porción restante clasificada C-2 permanecerá inalterada en su clasificación.

En cuanto se percataron por su propia cuenta de los referidos planes de la Telefónica, el 12 de septiembre de 1994, la Asociación presentó ante la Junta una solicitud de intervención y vista pública para exponer sus puntos en relación al referido proyecto. ▮ El 21 de septiembre de 1994 la Junta denegó ambas solicitudes y aprobó la consulta para la ubicación del referido proyecto y accedió a la solicitud de variación en uso de la Telefónica. Ante dicha situación, la Asociación y otras comunidades del área solicitaron reconsideración a la Junta, la cual fue denegada.

La Asociación solicitó revisión al entonces Tribunal Superior, Sala de San Juan, alegando que la variación de uso concedida requería la celebración de vistas públicas. Dicho foro denegó los planteamientos de la Asociación y luego de acudir a este tribunal mediante *certiorari* y este foro confirmar a la Junta, recurrieron al Tribunal Supremo.

El Tribunal Supremo, mediante opinión *Per Curiam* de 6 de noviembre de 1995, determinó en síntesis, que la Junta estaba obligada por su propias reglas a celebrar vistas públicas antes de conceder *un permiso de variación en uso.* ▮

Como para la fecha de la referida decisión del Tribunal Supremo ya había comenzado la construcción del edificio, la Asociación solicitó la paralización de la misma, ordenándose ésta el 12 de diciembre de 1995 por el Tribunal Supremo. ▮

Posteriormente y a solicitud de la Telefónica, el Tribunal Supremo modificó su orden de paralización para que sólo aplicara al área de estacionamiento que construye en el solar R-3 y no el área de multiusos que se construye en el solar C-2.

Finalmente, y luego de otras incidencias procesales, la Junta convocó para vista pública el 27 de febrero de 1996. ▮ Las referidas vistas se celebraron el 27 de febrero y el 4 de marzo de 1996.

Según surge de la transcripción de las vistas administrativas y de la exposición narrativa estipulada de la prueba, presentados por las partes a las referidas audiencias, comparecieron residentes de todas las áreas circundantes, la Telefónica de Puerto Rico, representada por sus abogados y varios peritos que testificaron sobre el impacto del tránsito y del ruido en el área propuesta para la construcción del proyecto.

Luego de celebradas las vistas administrativas el 22 de mayo de 1996, la Junta emitió su decisión. ▮ En la misma acuerda que es viable el desarrollo del proyecto de construcción de estacionamiento para empleados según solicitado por la Telefónica en la parte del predio zonificado R-3. En su resolución, la Junta condiciona el desarrollo del proyecto a los siguientes señalamientos y recomendaciones, los cuales deben tomarse en consideración en la próxima etapa que será

determinada por la Administración de Reglamentos y Permisos: (1) Se autoriza el proyecto de estacionamiento para empleados según solicitado en la parte del predio zonificado R-3. (2) Los demás parámetros de diseño corresponderán a un Distrito C-2. (3) La Administración de Reglamentos y Permisos determinará cuál será la próxima etapa en el trámite del proyecto, la cual deberá cumplir con todas las disposiciones de leyes, reglamentos y normas de planificación vigentes y aplicables, así como con las normas de dicha Administración. (4) Se cumplirá con los requerimientos de la Junta de Calidad Ambiental y demás agencias concernidas. (5) Se utilizarán medidas de mitigación para minimizar el reflejo de las luces de los vehículos y el ruido generado por el proyecto. El 3 de julio de 1996, la Asociación solicitó reconsideración de la decisión emitida por la Junta. El 26 de julio de 1996, la Junta denegó la misma y reafirmó su decisión de 22 de mayo de 1996. En esa misma fecha (3 de julio de 1996) la Telefónica presentó una Moción Urgente en Auxilio de Jurisdicción ante el Tribunal Supremo. En la referida moción, la Telefónica arguye que toda vez que la Junta había emitido una resolución aprobando la consulta de ubicación se les debía permitir la continuación del proyecto de construcción del edificio multipisos. La Asociación se opuso a dicha moción por no ser la resolución emitida por la Junta final y firme. El 12 de julio de 1996 el Tribunal Supremo declaró sin lugar la referida moción en auxilio de jurisdicción.

El 12 de agosto de 1996, la Asociación presentó solicitud de revisión de la decisión de la Junta de 22 de mayo de 1996 ante este Tribunal.

El 22 de agosto de 1996, la Telefónica presentó una nueva Moción en Auxilio de Jurisdicción ante el Tribunal Supremo la cual fue remitida a éste el 28 de agosto de 1996, ██ solicitando que se le permitiera la continuación del proyecto en controversia. Mediante resolución de 20 de septiembre de 1966 declaramos sin lugar la solicitud de la Telefónica, paralizando así la construcción del referido proyecto hasta tanto este tribunal dilucide el presente recurso.

Habiéndose considerado el recurso instado, la totalidad de los documentos que obran en autos y, en particular, los fundamentos aducidos por la Junta, resolvemos que no se cometieron los errores imputados.

### III

En su primer señalamiento de error aduce la Asociación que incidió la Junta al actuar de forma arbitraria y prejuiciada violando su derecho al debido proceso de ley. En síntesis, sus argumentos se circunscriben a señalar el procedimiento que siguió la Junta con los testigos periciales de la Telefónica y el rigor procesal con el que alegadamente se les trató. Entendemos que no se cometió el error imputado.

En Puerto Rico la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, mejor conocida como la Ley de Procedimiento Administrativo Uniforme *("LPAU")* ██ rige fundamentalmente los procesos adjudicativos de las agencias administrativas. Dicho cuerpo de leyes sistematiza y crea un cuerpo uniforme de reglas mínimo que toda agencia deberá observar en sus procesos adjudicativos, siempre con el objetivo de alentar la solución informal de las controversias administrativas de manera que resulte innecesaria la solución formal de los asuntos sometidos ante la agencia. No obstante, claramente la LPAU dispone que las propias agencias establecerán las reglas y procedimientos que permitan la solución informal de los asuntos ante su consideración. ██

En cuanto a las audiencias a celebrarse en el proceso adjudicativo, la LPAU no impone un formato especial para la celebración de las mismas. Deja a la discreción del funcionario que la presida la facultad de determinarlo. Empero, le exige a dicho funcionario *"que presida la vista dentro de un marco de relativa informalidad, ofrecer a todas las partes la extensión necesaria para una divulgación de todos los hechos y cuestiones en discusión.* ██ *Por ello resulta, ineludible que se examine el reglamento de la agencia que gobierna el procedimiento adjudicativo para determinar si se ha confeccionado un formato a ser seguido en la audiencia".* Fernández, Demetrio, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* Editorial Forum, Colombia, 1993, a la pág. 170.

Cónsono con los criterios antes esbozados, la Sec. 8.0 del Reglamento de Procedimiento para las Decisiones Adjudicativas de la Junta de Planificación de 23 de noviembre de 1989 (Reglamento

Adjudicativo) establece que:

*"El Oficial Examinador, dentro de un marco de relativa informalidad, ofrecerá a todas las partes el tiempo razonablemente necesario para una divulgación completa de todos los hechos y cuestiones en discusión, la oportunidad de responder, presentar evidencia y argumentar, conducir contrainterrogatorio y someter evidencia en refutación."*

El Oficial Examinador, a su discreción, fijará la duración de la argumentación oral y del interrogatorio y contrainterrogatorio de testigos.

A la luz del anterior precepto, los linderos en torno al procedimiento a seguir durante la vista serán al arbitrio del oficial examinador, quien presida la misma, éste el encargado de fijar la duración de la argumentación de las partes y los contrainterrogatorios. De igual forma, sostiene la Sección 8.12 del referido Reglamento Adjudicativo que será el oficial examinador, a su buen criterio, quien regulará el orden de las presentaciones. Con esto en mente veamos el caso que nos ocupa.

En el presente caso, según surge de la exposición narrativa de la prueba, la oficial examinadora designada al caso, antes de comenzar la vista, explicó la forma y manera en que se llevaría a cabo la misma; en ningún momento surge que haya existido un ambiente hostil o que actuara de forma arbitraria en perjuicio del debido proceso de ley de los recurrentes.

En ese sentido, la oficial examinadora hizo claro en varias ocasiones durante la vistas administrativas que los procedimientos de consulta de ubicación ante la Junta de Planificación, a pesar de tratarse de procedimientos adjudicativos, no constituian procedimientos judiciales, por lo que no tienen el mismo rigor. De ahí, la flexibilidad que caracteriza dichos procedimientos, dirigidos obviamente a la búsqueda de la verdad y al libre flujo de información, de tal forma que la decisión que se emita tome en cuenta todos los elementos necesarios para ello. De igual forma, en los tribunales, el juez o jueza tiene la discreción de ordenar la presentación de la prueba.

En autos, según se desprende de la exposición narrativa de la prueba, los procedimientos se llevaron a cabo de una forma flexible, pero ordenada. El hecho de que desfilaran todos los peritos y luego se les contrainterrogara es un asunto que está dentro de la completa discreción del oficial examinador que dirige la misma.

Es un principio reconocido en derecho administrativo que las reglas de evidencia no son de aplicación a sus procedimientos adjudicativos. ██ Descansa esta postura en el reconocimiento de que exigirle a las agencias administrativas el cumplimiento de todas las formalidades técnicas del derecho probatorio equivaldría a imponerle una carga sustancial y onerosa y el próposito es evitar así las *"trabas procesales de los tribunales de justicia"*. Fernández, Demetrio, *supra*, a la pág. 173; veáse, además, *López Vives v. Policía de PR,* 118 D.P.R. 219, 231 (1987). ██

A esos efecto, la oficial examinadora, en representación de la Junta, no infringió ningún derecho a las partes al permitir el interrogatorio directo de todos los testigos, luego su contrainterrogatorio. Como tampoco cometió ninguna de las otras actuaciones imputadas por la Asociación al dirigir los procedimientos. Ni de la exposición narrativa de la prueba, ni de la transcripción de la vista surge que se limitara el tiempo en el contrainterrogatorio de los testigos, ni mucho menos surge que el rigor procesal hacia la Asociación haya sido uno *"exagerado"* que impidiera a éstos contrainterrogar efectivamente a los testigos de la Telefónica.

La Asociación cuestiona el hecho de que no se permitió contrainterrogar al Ing. Néstor Quevedo, perito de la Telefónica, sobre cómo éste había llegado a la conclusión de que las emisiones de gases a ser generados por los automóviles en los cuatro pisos del edificio de la Telefónica no afectaría la salud de los residentes contiguos. Surge de la resolución de la Junta que la negativa de contrainterrogar al Ing. Quevedo sobre la forma en que realizó su estudio, responde únicamente al interés de la Junta de respetar el" *expertise"* de la Junta de Calidad Ambiental y enfatizar que dicha Junta ya había otorgado los permisos. ██

Recapitulando, no hay base para asumir que en este caso no se hubiese celebrado una vista adecuada, análoga a la que tanto la LPAU como el Reglamento de la Junta requieren. Recordemos que

si bien el debido proceso de ley ofrece protección contra la arbitrariedad administrativa, no es un molde rígido que prive de flexibilidad en toda instancia los procedimientos administrativos. *Rodríguez v. Tribunal Superior,* 104 D.P.R. 335 (1975). Por lo que no se cometió el primer error imputado.

## IV

Como segundo y tercer señalamiento de error sostiene la Asociación que incidió la Junta al autorizar variaciones de uso en el solar R-3 objeto de la consulta de ubicación al determinar que el edificio multiusos construido en el solar C-2 no requiere variación en uso. Veamos sus planteamientos.

En primer lugar, antes de entrar a discutir los errores imputados queremos a modo de prologo transcribir las muy acertadas palabras del Juez Asociado del Tribunal Supremo Negrón García, cuando expresó que "*la planificación ha sido adecuadamente definida como aquel mecanismo racional que esboce las metas, fines y objetivos de la comunidad, evalúe los recursos, potencialidades y los factores limitativos a su logro, y estructure las prioridades necesarias y sus respectivos instrumentos de ejecución, para la utilización que más se ajuste a los recursos disponibles; tanto en el presente como en el futuro, para la más plena satisfacción de las necesidades colectivas.*" ■ *Fuentes v. Administración de Reglamentos y Permisos,* ___ D.P.R. ___ (1992), **92 J.T.S. 105.**

Por lo anteriormente expresado, los organismos gubernamentales a cargo de la planificación tienen la ardua labor de hacer un balance entre los intereses de cada uno de los miembros de la sociedad y la consecución de una mejor calidad de vida colectiva. Los problemas inherentes a nuestros centros urbanos: densidad poblacional, congestión vehicular, escasez de áreas de esparcimiento, falta de estacionamientos, aglomeración y una infraestructura insuficiente ha hecho que bajo ciertas circunstancias sea posible la concesión de una "*variación* " Las denominadas "*variaciones*" no son más que cambios a las restricciones que sujetan a una propiedad. Véase *Asociación Res. Baldrich. Inc. v. U.P.R.,* 118 D.P.R. 759 (1987).

La controversia en este caso se limita a determinar si existen las circunstancias especiales para la concesión de la variación y así dedicar la propiedad a un uso prohibido por el Reglamento de Zonificación de 16 de septiembre de 1992. En *Quevedo Segarra v. J.A.C.L.,* 102 D.P.R. 87, 93 (1974), el Tribunal Supremo expresó que la variación tiene el propósito de atenuar el rigor del reglamento *permitiendo el uso prohibido cuando se demuestra que, debido a las circunstancias especiales, la "aplicación de las restricciones pueden resultar irrazonables y ocasionar perjuicios al dueño".*

Con el propósito de definir los límites de su amplio poder sobre la concesión de variaciones, la Junta adoptó el Reglamento de Zonificación de 16 de septiembre de 1992 *("Reglamento de Planificación Núm. 4")* que en su sección 98 establece los criterios para otorgar variaciones y evitar que la aplicación literal de sus requerimientos resulte en una confiscación de la propiedad. El referido Reglamento establece dos tipos de variación: variación en el uso de una propiedad (sec. 98.05) y *"otras variaciones",* (sec. 98.06).

En el presente caso, la Telefónica se propone edificar un estacionamiento multipisos y un centro de actividades, entre otras cosas, para sus empleados sobre los lotes zonificados bajo la clasificación R-3 y C-2. El primero de estos sólo permite casas residenciales, lo que claramente excluye los fines propuestos por la Telefónica. ■

El segundo permite varios tipos de negocios, incluyendo el solicitado ■ con ciertas restricciones.

A los fines de determinar a qué variación o variaciones, si alguna, encontramos en el presente caso, ya sea en uso o de otra naturaleza, es necesario determinar qué usos de los propuestos estarían ubicados en cada parte del terreno, ello a tenor con lo dispuesto en la Sección 4.03 del Reglamento de Planificación Núm. 4 que establece:

*" Sección 4.03 - Casos con dos clasificaciones- cuando los límites de un distrito dividan un solar en dos o más partes con zonificación diferente se le aplicará a cada parte del solar los requisitos que le corresponden de acuerdo al distrito en que ubique.*

En el caso que nos ocupa entendemos que no existe ningún problema para los usos propuestos en el solar C-2. En el solar C-2, se ubicará el multiusos y parte del estacionamiento multipisos. La parte del edificio multiusos conlleva la construcción de un salón de reuniones para los empleados de la Telefónica, un gimnasio para aeróbicos, una oficina para enfermería y una oficina para orientación.

En este distrito se permite, conforme a la sección 22.02 del Reglamento de Planificación Núm. 4, *supra*, entre otros, los siguientes usos:

*"22.02 - Usos en distritos C-2 - En los Distritos C-2 se usarán los edificios o pertenencias para los fines expuestos a continuación:*

.....

*(16) Establecimiento para servicios personales*

.....

*(19) Estacionamiento de vehículos livianos en solares o estructuras construidas para esos propósitos siempre que se cumpla con lo establecido para el diseño de áreas de estacionamiento en la subsección 84.02 de este Reglamento.*

.....

*(27) Gimnasio*

.....

*(29) Hospital o dispensario de medicina general, excepto para el tratamiento de dementes o enfermedades contagiosas.*

.....

*(41) Oficina*

...." .

Surge de lo anterior que los usos propuestos para el edificio multiusos están permitidos en el distrito C-12. Por tanto, no erró la Junta al determinar que la construcción del referido multiusos no requería variación en uso.

Ahora, veamos los fines propuestos para el solar ubicado en el distrito R-3.

El solar R-3 es utilizado actualmente para estacionamiento, y se propone la construcción de un estacionamiento en multipisos. La sección 84.01(2) del Reglamento de Planificación Núm. 4, *supra*, dispone que en los distritos residenciales se podrá permitir el establecimiento como negocio o para servir en uso comercial, para vehículos con capacidad clasificada de no más de una y media (1.5) toneladas, en solares o predios abiertos, contiguos a un Distrito C-L, CO-1, C-1 o CT-1 y en solares o predios abiertos que estén a una distancia no mayor de cien (100) metros de un Distrito CO-2, C-2, C-3, CT-2, CT-3, CT-4, I-1, IL-1, I-2, IL-2, siempre que cumpla con lo establecido para el diseño de áreas de estacionamiento en la Sección 84.02 del referido Reglamento.

En autos, como bien concluyó la Junta en su resolución de 22 de mayo de 1997, el solar zonificado R-3 queda a mucho menos de los cien metros indicados en la sección 84.01, ya que colinda con un solar zonificado C-25. ▆▆

Ahora bien, la Telefónica solicitó a la Junta las siguientes variaciones:

*"1. Para el solar en un Distrito C-2: eliminación del patio lateral requerido con relación a un*

*distrito residencial (al sur de la propiedad);*

*2. Para el solar en un Distrito R-3: aumento en el área de ocupación permitida de 50% a un 85%, eliminación de patio·lateral requerido con relación al solar·colindante al·norte, zonificado comercial."*

La Sección 98-05 del Reglamento de Planificación Núm. 4, *supra*, establece dos criterios que se tomarán en consideración antes de aprobar una variación en uso. Analizados cada uno de los requisitos que exige la referida sección 98.05, *supra*, con las circunstancias particulares del proyecto bajo consideración, concluimos, como lo hizo el foro recurrido, que la Telefónica justificó que el referido proyecto cumplía con los criterios para conceder una variación en uso. ·

Por considerar esencialmente correctas las determinaciones de hechos que en ese sentido realizó la Junta, acogiendo los planteamientos de la Telefónica, transcribimos literalmente los mismos:

*"Los criterios para variación en uso, según discutidos, que deben considerarse son los siguientes:*

*1. El costo de adaptar la propiedad a los usos permitidos debido a disposiciones de éste u otros reglamentos y el beneficio que derivaría una vez adoptada ésta para los usos permitidos.*

*No habría beneficio alguno a la comunidad general y, por el contrario, se agravaría la situación existente. Por un lado, se agravaría la situación crítica de falta de estacionamiento para los empleados que actualmente existe, forzando a extender el estacionamiento en la calle más lejos de lo que actualmente ocurre. Por otro lado, si se construyese un edificio de apartamientos, la congestión de tránsito se agravaría, ya que aumentaría el número de vehículos que vendría al área.*

*2. Las razones por las cuales ningún uso permisible es factible en la propiedad sin variación deben ser únicas a la misma y no una característica general de distrito o del sector del distrito donde ubica. No podrán haber sido causadas por el dueño.*

*Las razones por las cuales el uso residencial no es factible son únicas a la propiedad, por razón de ser la única propiedad R-3 utilizada para estacionamiento de un edificio, con un déficit en la oferta de estacionamiento debido a la época en que se construyó. La necesidad de utilizar la propiedad R-3 utilizada para estacionamiento de un edificio no fue causada por el dueño actual de los terrenos, ya que al momento en que la Junta de Planificación autorizó la adquisición de los mismos, ya se dedicaban a estacionamiento.*

*3. El uso para el cual se solicita la variación a las disposiciones reglamentarias es compatible con los propósitos del distrito y con el vecindario o comunidad en que ubica.*

*El propósito del distrito R-3 es permitir el desarrollo de usos residenciales; no obstante lo anterior, el propio Reglamento de Zonificación vigente, admite que aquellos solares próximos a distritos comerciales C-2 pueden ser utilizados como estacionamiento.*

*4. La variación solicitada no afectará adversamente, entre otros, los siguientes:*

*a. La disponibilidad de la infraestructura:*

*En términos de la disponibilidad de la infraestructura, el uso de estacionamiento no tiene impacto significativo para atender básicamente a un personal que actualmente acude al sector. Por el contrario, desahoga las calles que actualmente se utilizan para.estacionamiento.*   · ·

*b. El contexto en que ubica:*

*El contexto de este proyecto consiste de un edificio multipisos de oficinas al Norte (PRTC), al Este hay un centro comercial sur-regional, al Sur hay dos edificios multipisos de apartamentos y al Oeste, colinda con una hilera de casas unifamiliares, algunas de las cuales cuentan con dos pisos y otras con uno. La alturas solicitadas, por lo tanto, son menores que la de los usos al Norte y al Sur. El centro comercial no se afecta en lo absoluto por el desarrollo de una planta adicional en la porción*

*R-3 del solar. Tampoco se afectan los usos residenciales de una y dos plantas, ya que en el solar zonificado R-3 se permitiría un edificio de apartamentos de gran altura.*

*El uso de estacionamiento propuesto para la planta encima de la permitida está diseñada de forma que las luces de los vehículos no iluminen las residencias, por lo que no afectarán adversamente los usos existentes.*

*c. El ambiente de la calle:*

*La variación en el patio delantero no afecta adversamente el ambiente de la calle, ya que el patio propuesto está diseñado para acomodar un tratamiento paisajista de gran calidad. Esto permite que el ambiente peatonal sea agradable, ya que no se estará caminando ante un muro ciego. Insistir en el patio mínimo de tres metros no logra un cambio substancial en el ambiente de la calle.*

*d. La seguridad y tranquilidad de los vecinos:*

*Ninguna de las variaciones solicitadas afecta adversamente la seguridad y tranquilidad de los vecinos. El uso de estacionamiento existente y propuesto, así como el salón de usos múltiples permitido ministerialmente en el Distrito C-2 son usos de la Telefónica. Debido a reglamentación federal sobre la seguridad de las instalaciones de comunicación, se continuará brindando la vigilancia necesaria para mantener la seguridad y, por ende, la tranquilidad de los vecinos.*

*5. El uso propuesto beneficia al vecindario.*

*El uso propuesto beneficia al vecindario, tanto residencial como comercial, al permitir acomodar dentro de los predios de la Telefónica vehículos de empleados que ahora se encuentran en la calle. También los empleados son parte del vecindario. La seguridad de sus vehículos se ve comprometida por el estacionamiento en las calles circundantes.*

*6. El uso para el cual se solicita la variación está permitido por las disposiciones del Tópico sobre Zonas Escolares de este Reglamento.*

*Aunque no hay Zonas Escolares designadas para estos solares, el uso propuesto está permitido por el tópico correspondiente. En dicho tópico se prohibe una serie de usos tales como agencias hípicas y otros que no son cónsonos con un ambiente escolar."*

Como observamos, la Telefónica, muy acertadamente, justificó los criterios que se consideran antes de obtener el referido permiso para efectuar una variación en uso. Por lo que no incidió la Junta al autorizar las variaciones solicitadas. ▪

## V

Atendemos ahora el cuarto planteamiento de error. Sostiene la Asociación que la conclusión de la Junta de que el edificio multiusos no afectará la situación de tránsito, el ruido y la contaminación ambiental no está apoyada por evidencia que surge del récord administrativo.

Hemos analizado con detenimiento la transcripción de las vistas administrativas efectuadas por la Junta y los testimonios periciales allí presentados y concluimos que tal error no fue cometido.

En primer lugar, en cuanto al impacto del ruido y la contaminación ambiental, la Telefónica presentó como perito al Ing. Néstor Quevedo, ingeniero civil con concentración en ingeniería ambiental, quien realizó un estudio sobre el impacto del tránsito, del ruido y de la calidad del aire para las facilidades propuestas. Según surge de la Exposición Narrativa de la Prueba Estipulada, el ingeniero Quevedo sostuvo en sus declaraciones ante la Junta que en cuanto al impacto del ruido hizo un muestreo y que el mismo arroja un nivel de ruido diurno en el ambiente de 63 dba, y concluyó en ese sentido que el proyecto no va a generar ruidos adicionales que aumenten el nivel del ruido ambiental existente. Este señaló que el ruido que genera un vehículo de motor liviano, como los que acudirán al estacionamiento propuesto, se produce mayormente con el contacto de la carretera con las gomas, y que a mayor velocidad viaje dicho vehículo, mayor es el ruido. Adujo que el centro de

emisión de los niveles de ruido en los autos, por ser el contacto de la rueda con la carretera, es un *"centro bajo".* Señaló además, que el estacionamiento propuesto va a tener un parapeto en toda su parte exterior donde se va a colocar unos *"planters",* y que siendo el centro de ruido de los vehículos unos de un *"nivel bajo", el ruido que va a salir al exterior es muy poco."* ■

Cabe mencionar que la Asociación no presentó prueba pericial para contrarrestar lo aludido por el testigo de la Telefónica.

La Junta le dio credibilidad al testimonio presentado por el Ing. Quevedo en cuanto al impacto del ruido y a la contaminación del aire. En adición, la Junta en su resolución sostuvo que la Junta de Calidad Ambiental en este caso ya se había expresado en cuanto al proyecto propuesto, concluyendo que se cumplía con la Ley Núm. 9 de 18 de junio de 1971, según enmendada, mejor conocida como Ley sobre Política Pública Ambiental.

Con relación al impacto del tránsito a generarse por la construcción del proyecto declararon los ingenieros Quevedo y William Vivoni. El Ingeniero Quevedo básicamente expresó en sus declaraciones que el estacionamiento propuesto por sí no genera tránsito, que es una edificación auxiliar al uso, que es el que genera tránsito. No obstante, admitió que no había realizado un estudio sobre cuál sería el impacto, pero que lo estaba aseverando a base de su experiencia como perito de tránsito. ■

Por su parte, el Ing. Vivoni, residente del área de Park Side, se circunscribió a señalar que el estudio de tránsito realizado por la Telefónica posee serias deficiencias. No obstante, no manifestó haber hecho un estudio concreto sobre el impacto de tránsito en el lugar con la construcción del estacionamiento multipisos. ■

Tomando en consideración todo el expediente administrativo, todas las declaraciones ofrecidas en las vistas administrativas, no hemos encontrado prueba de que la Junta actuara arbitraria o caprichosamente al darle crédito a las declaraciones de los peritos de la Telefónica, ni al concluir que el proyecto era viable a tenor con lo establecido por la Junta de Calidad Ambiental. De hecho, el tribunal no está obligado a seguir indefectiblemente la opinión de los peritos que presenten las partes.

Aunque estamos conscientes de que existe prueba conflictiva de la cual podemos inferir conclusiones distintas a las de la Junta, sin embargo, esa es misión que no nos corresponde. Nuestra función debe ser poner en vigor la orden o resolución si encontramos evidencia sustancial para sostener las conclusiones de la Junta. *La Junta de Relaciones del Trabajo v. Línea Suprema, Inc.,* 89 D.P.R. 840, 849 (1964). La determinación en cuanto a que a la luz de los informes, los testimonios presentados en la vista y de su propia experiencia, el edificio multiusos no afectará la situación de tránsito, el ruido y la contaminación ambiental son de la competencia de la Junta y no nos corresponde pasar sobre la credibilidad de testigos o repasar la evidencia, en ausencia de elementos que denoten prejuicio y/o parcialidad.

## VI
Finalmente, arguye la Asociación como cuarto y quinto señalamiento de error que incidió la Junta al aprobar una rezonificación sin que se haya cumplido con los requisitos establecidos en la ley y al concluir que el proyecto propuesto por la Telefónica cumple con el plan de usos y terrenos y satisface los criterios de un desarrollo extenso.

En cuanto a estos señalamientos de error, acogemos los planteamientos de la Junta en el sentido de que, en el presente caso, por la cabida de los predios objetos de consulta, no procede tramitarse una petición de rezonificación, pero sí un proyecto de desarrollo extenso conforme a la Sección 4.05 del Reglamento de Planificación Núm. 4, *supra.* Sostiene la Junta que en el caso que nos ocupa, el uso propuesto es uno institucional, a tramitarse conforme a la Sub-sección 97.07 (otros desarrollos extensos) del Reglamento de Planificación Núm. 4, *supra,* que requiere celebración de vista pública con notificación a los dueños de las propiedades en un radio de cien (100) metros. ■ La Junta cumplió con dicho requisito.

El 27 de febrero de 1996, la Junta publicó un Aviso de Vista Pública donde dicho organismo hacía

referencia a las posibles enmiendas al Mapa de Zonificación de Guaynabo vigente y que los terrenos objetos de la consulta estaban comprendidos dentro de un Distrito R-3 y C-2. Por lo que no albergamos duda que las partes fueron debidamente notificadas del proceso que se llevaría a cabo.

Finalmente, concluimos, como bien lo hizo el organismo recurrido, que la consulta objeto de consideración constituye una mejora pública a tenor con lo dispuesto en el Reglamento Adjudicativo, *supra*, y que se tramitó al amparo de las disposiciones del mismo. ■

De igual forma, entendemos que la Junta actuó correctamente y conforme a derecho al concluir que el proyecto de la Telefónica cumple con el Plan de Usos de Terrenos y satisface los criterios de un desarrollo Extenso. La Sección 2.01 del Reglamento de Planificación Núm. 4, *supra*, define el concepto de desarrollo extenso, entre otros, como "*el desarrollo de facilidades comerciales, industriales, institucionales o recreativas que exceden veinte mil (20,000) pies cuadrados de construcción o en terrenos que exceden cuatro mil (4,000) metros cuadrados*".

En el caso que nos ocupa estamos frente a un proyecto institucional que ocupa terrenos que exceden 4,000 metros cuadrados, por lo que cumple con los criterios de una obra de desarrollo extenso. Por otro lado, el proyecto cumple con el Plan de Usos de Terrenos. Conforme a este Plan de Usos de Terrenos para la Región Metropolitana de San Juan, el proyecto cae bajo Zona de Redesarrollo. ■

La Junta concluyó que el proyecto en controversia cumple con las siguientes estrategias para la Zona de Redesarrollo a tenor con el Reglamento de Planificación Núm. 4, *supra*, estos son: la 18.04 para fomentar la construcción de edificios de estacionamiento; la 20.01 para promover que los usos institucionales y comerciales se ubiquen en terrenos a lo largo de las vías servidas por la transportación pública, cuando se provean las facilidades adecuadas de estacionamiento y se provean áreas de estar y esparcimiento en los usos institucionales o en su lugar espacios públicos internos adecuados y la 21.01 para estimular la densificación de las áreas adyacentes a las vías y calles principales que están servidas por el sistema de transportación pública. En este caso, los solares donde se propone el desarrollo están cercanos a la Avenida F.D. Roosevelt, servida por el sistema de transportación pública.

En conclusión, las determinaciones de hechos realizadas por la Junta están apoyadas en evidencia sustancial contenida en el expediente administrativo. Siendo ello así, las mismas no deben ser alteradas por los tribunales como parte del proceso de revisión judicial. *Asociación de Doctores de Medicina v. Morales,* ___ D.P.R. ___ (1993), **93 J.T.S.12**, a la pág. 10349; sec. 4.5 de L.P.A.U. ■

Siendo esa la situación y no existiendo evidencia alguna en los autos de que la información en que se basó la Junta para tomar su decisión no fuese cierta, la autorización del proyecto fue una acción prudente, responsable y acorde con el Reglamento. Los procedimientos ante un organismo administrativo tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. *Asoc. D.C.V.P. v. Tribunal Superior,* 101 D.P.R. 375, 880 (1974). Es imperativo normativo reiterado que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto y que su revisión judicial se limita a determinar si la agencia actuó arbitraria, ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción. *Fuertes v. A.R.P.E.,* ___ D.P.R. ___ (1993), **93 J.T.S. 165**, págs. 11385, 11386; *Murphy Bernabe v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975). La presunción de legalidad y corrección en este caso no ha sido rebatida, como tampoco los recurrentes han demostrado que la actuación de la Junta constituyó un abuso de discreción.

Recapitulando y según los autos, resolvemos que la Junta actuó dentro de la autoridad y discreción que le concede su reglamento y su decisión no fue irrazonable, caprichosa o ilegal.

Por los fundamentos anteriormente consignados, se expide el auto y se confirma la resolución recurrida.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 97 DTA 173

**1.** Apéndice de la Solicitud de Revisión, a la página 95.

**2.** Véase *Asociación de Residentes de Park Side. Inc. y otros v. Junta de Planificación y Compañía Telefónica de P.R.,* ___ D.P.R. ___ (1995), **95 JTS 149.**

**3.** Apéndice de la Solicitud de Revisión, a las páginas 102-103.

**4.** Apéndice de la solicitud de revisión, a las páginas 241-244.

**5.** El 6 de junio de 1996, la Junta emite una resolución enmendada, notificada el 14 de junio de 1996, donde le apercibe a las partes su derecho a solicitar reconsideración.

**6.** En su resolución de 28 de agosto de 1996, el Tribunal Supremo señaló que se remitía la Moción en Auxilio de Jurisdicción a este foro para resolver la misma a la luz de la solicitud de revisión pendiente.

**7.** 3 L.P.R.A. 2101 *et seq.*

**8.** 3 L.P.R.A 2101.

**9.** 3 L.P.R.A. 2163(b).

**10.** 3 L.P.R.A. 2163(e).

**11.** La Sección 8.9 del Reglamento Adjudicativo dispone sobre la aplicación de las Reglas de Evidencia.

*"Las Reglas de Evidencia no serán aplicables en los procedimientos seguidos en las vistas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento."*

**12.** Apéndice de la Solicitud de Revisión, a la página 22.

**13.** Véase, además, Negrón García, Luis & Tila Hormazábal Hancock, *Ley de Planificación de Puerto Rico: Análisis de Política Pública,* 38 Rev. Jur. U.P.R. 415 (1989).

**14.** La Sec. 13.02 del Reglamento de Planificación Núm. 4, *supra*, dispone en cuanto a los usos en el Distrito R-3:

*"13.02 - Usos en Distritos R-3 - En los Distritos R-3 se usarán los edificios o pertenencias para los fines expuestos a continuación:*

*1. Casas de una o dos familias*

*2. Casas en hilera y casas patio de acuerdo con lo establecido en las Secciones 74.00 y 75.00 de este Reglamento.*

*3. Casas de apartamientos, de acuerdo con lo establecido en la Sección 76.00 de este Reglamento.*

*4. Otros usos de acuerdo con lo establecido en la Sección 99.00 de este Reglamento."*

**15.** En una porción de este solar es que se propone el Salón de Usos Múltiples, gimnasio y enfermería. En la porción sur del solar zonificado C-2, se construirá parte del edificio de estacionamiento.

**16.** Apéndice de la Solicitud de Revisión, a la página 9.

**17.** Aun en la suposición de que la variación concedida para la edificación haya sido una dispensa del reglamento sin cambios en el uso, entendemos que la Telefónica discutió y justificó que también se cumplía con los requisitos de la Sección 98.06 del Reglamento de Planificación Núm. 4, *supra*, en cuanto a la concesión de otras variaciones. Apéndice de la solicitud de revisión, a las páginas 137-139.

**18.** Exposición Narrativa Estipulada, a las páginas 37 y 38.

**19.** Exposición Narrativa de la Prueba Estipulada, a las páginas 8 y 14.

**20.** Exposición Narrativa de la Prueba Estipulada, a las páginas 23-32.

**21.** Apéndice de la Solicitud de Revisión, a la página 18.

**22.** La Sección 2.00 (11) del Reglamento Adjudicativo de Planificación, *supra*, define mejora pública como:

*"11. Mejora Pública - Toda mejora permanente, toda nueva construcción, ampliación o reconstrucción (sin incluir reparación) de obra pública autorizada, pagada, supervisada, dirigida, emprendida o controlada por algún organismo gubernamental, incluyendo, entre otras, toda adquisición, venta, permuta, cesión, arrendamiento o cambio en el uso de propiedades por cualquier funcionario u organismo y llevada a cabo mediante contratos de obra con entidades privadas."*

**23.** La Zona de Redesarrollo se denomina así, debido a que, por estar prácticamente construida, los incrementos en población, facilidades y en servicios, tendrán que ser mediante redesarrollo o reconstrucción. Es una zona en la que existe una gran diversidad de usos altamente organizados en relación a las vías. Apéndice de la Solicitud de Revisión, a la página 28.

**24.** 3 L.P.R.A., Sec. 2175.