PEDRO JUAN RODRÍGUEZ, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE PONCE, HON. EUGENIO VELÁZ-QUEZ MARTÍNEZ, JUEZ, demandado.

*Número:* O-75-300          *Resuelto:* 6 de noviembre de 1975

336

*Charles A. Cuprill Hernández,* abogado del peticionario; *Wilfredo López Irizarry, Reynaldo Rodríguez Pagán, Samuel Mártir Santiago, Mario Batiz Santos* y *Yusif Mafuz Blanco,* abogados del Departamento de Asuntos del Consumidor.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

En noviembre de 1971 el señor Francisco Martínez Mateo se querelló contra el aquí peticionario, señor Pedro Juan Rodríguez, por alegados defectos de construcción en una casa que le fue construida por éste. Tras la celebración de una vista en rebeldía sobre el particular, de la cual se notificó al contratista a la dirección con que contaba la agencia, se dictó una orden por el Secretario de Asuntos del Consumidor para que el contratista corrigiese los defectos concernidos o, en su

defecto, le reembolsase el costo de su corrección, montante a $3,797.00, al dueño de la casa.

Al constatar que su orden se había incumplido, el Secretario de Asuntos del Consumidor acudió al Tribunal Superior para que éste pusiese en vigor la misma bajo apercibimiento de desacato. El 19 de octubre de 1973 el Tribunal accedió a lo solicitado, notificándose al contratista. El contratista compareció entonces, cerca de un mes después del diligenciamiento de la orden, señalando que tenía válidas defensas que plantear y reclamando sesenta días para hacerlo. Se le concedieron treinta. Transcurrido este término, el contratista peticionario radicó una moción de desestimación y solicitó otro término de treinta días, el cual se le negó, para presentar un memorando en apoyo de su escrito.

En su moción de desestimación el peticionario alegó, en esencia, que no se le notificó de la querella, negándosele así el derecho a vista y a agotar sus remedios administrativos en violación al debido proceso de ley y adujo también no ser un urbanizador o constructor dentro del sentido de las disposiciones legislativas en que supuestamente se basó el Secretario, lo que a su juicio privaba de jurisdicción al tribunal.

El 17 de mayo de 1974 se celebró una vista sobre la referida moción. Escuchada la prueba de las partes, el tribunal concluyó que no se le notificó al peticionario la orden del Departamento de Servicios al Consumidor, por lo que resolvió que debía dársele cumplimiento a dicho requisito. En el propio acto de la vista, según hizo constar el tribunal en su Resolución, se le entregó copia al peticionario de la orden administrativa sobre la corrección de los vicios de construcción o el reembolso de su equivalente en dinero. Posteriormente, el 18 de junio de 1974, el Departamento le hizo nueva entrega de su orden al contratista.

El contratista peticionario no cumplió con los términos de la orden, ni acudió a la agencia administrativa a solicitar su reconsideración o a efectuar cualquier otro planteamiento,

ni tampoco objetó la Resolución del tribunal o solicitó su clarificación.

El 30 de agosto de 1974, el Secretario de Asuntos del Consumidor solicitó nuevamente del tribunal que pusiera en vigor su orden bajo apercibimiento de desacato. El 11 de diciembre de 1974 el contratista reprodujo entonces la misma moción de desestimación que había radicado en el anterior procedimiento. El 17 de abril de 1975, luego de escuchar a las partes, se declaró sin lugar dicha moción. El contratista ha recurrido ante nos en petición de *certiorari*, a base fundamentalmente de los mismos planteamientos efectuados ante el Tribunal Superior, con una variante.

■ El peticionario alegó inicialmente que él no es un urbanizador o constructor dentro del significado de la Ley Núm. 130 de 13 de junio de 1967, 17 L.P.R.A. sec. 501 *et seq.*, y que por tal razón sus disposiciones no le eran aplicables. Ante nos alega que debió aplicársele dicha ley y que constituyó error no hacerlo. La contestación es que los procedimientos en este caso se rigen por la Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. sec. 341 *et seq.* La Ley Núm. 148 de 27 de junio de 1968, 23 L.P.R.A. sec. 1001 *et seq.*, transfirió todas las facultades que tenía el Oficial bajo la Ley Núm. 130 al Director de la Administración de Servicios al Consumidor, 23 L.P.R.A. sec. 1002. Al aprobarse la Ley Núm. 5 de 23 de abril de 1973 se transfirieron las funciones del Director de la Administración al Secretario del nuevo Departamento de Asuntos del Consumidor, incluyendo las facultades y poderes que aquél tenía bajo la Ley Núm. 130. La Ley Núm. 5 dispuso además que todas las querellas radicadas por consumidores se regirían por el procedimiento establecido en esa ley, 3 L.P.R.A. sec. 341m. Entendemos que la intención legislativa al aprobarse la Ley Núm. 5, según se deriva de su texto, fue proveer un procedimiento uniforme para todas las querellas sobre las cuales el Departamento tiene jurisdicción.

La Ley Núm. 5, ya en vigor al emitirse la orden del Secretario cuyo cumplimiento se interesa, concede el derecho a notificación y vista. 3 L.P.R.A. secs. 341*l*, 341*o* y 341p. También dispone con referencia a la reconsideración de las decisiones del Secretario, 3 L.P.R.A. sec. 341*o*, lo que es de especial interés en esta instancia, lo siguiente:

"Cualquier parte adversamente afectada por la decisión del Secretario, o del funcionario que éste designe a tenor con el inciso (d) de la sec. 341e de este título, en un procedimiento de naturaleza cuasi judicial o cuasi legislativa deberá solicitar dentro del término de diez (10) días a partir de la fecha de notificación de la decisión, la reconsideración del Secretario. El Secretario tendrá treinta (30) días para decidir la reconsideración solicitada, pasados los cuales, si no ha emitido su decisión se entenderá No Ha Lugar a la reconsideración solicitada, disponiéndose que el Secretario notificará tal hecho a la parte afectada."

Al peticionario en este caso se le ofrecieron dos oportunidades, como vimos, de solicitar la reconsideración bajo la Ley Núm. 5 de 1973 de la orden administrativa de que se queja. Su contención, no obstante, es no sólo que tenía derecho a que se celebrase una vista antes de cualquier decisión, sino inclusive a no reclamar su derecho a tiempo en ningún foro y a aguardar a que la agencia y el Tribunal Superior actuasen de nuevo para entonces él reproducir sus defensas. Las cuestiones que envuelve el caso son por tanto las siguientes: ¿Exige el debido proceso de ley que se retorne en estas circunstancias al primer peldaño, que no pueda ofrecerse la oportunidad de vista en la etapa de reconsideración? De no exigirlo el debido proceso de ley, ¿lo requiere el estatuto? Y, por último, respecto a la inacción del peticionario, ¿provee el estatuto un remedio exclusivo que debió seguirse?

Respecto al primer problema, se ha resuelto que la oportunidad adecuada de revisión administrativa puede curar la ausencia de notificación y vista previas. *Opp Cotton Mills,*

*Inc.* v. *Administrator of Wage and Hour Division,* 312 U.S. 126 (1941) ; *Inland Empire Dist. Council* v. *Millis,* 325 U.S. 697 (1945) ; 1 Davis, *Administrative Law Treatise,* sec. 7.10, pág. 450; *Ubarri Blanes* v. *Junta Hípica,* 96 D.P.R. 803, 807 (1968). El debido proceso de ley ofrece protección contra la arbitrariedad administrativa pero no es molde rígido que prive de flexibilidad en toda instancia los procedimientos de administración. No se trata aquí, por supuesto, de la negación de la oportunidad de ser oído en una etapa significativa de la causa. *Armstrong* v. *Manzo,* 380 U.S. 545 (1965) ; *Fuentes* v. *Shevin,* 407 U.S. 67 (1972). No hay base para asumir que en este caso no se hubiese celebrado una vista adecuada, análoga a la que el estatuto requiere que se ofrezca originalmente y, de no haber sido así, la propia Ley Núm. 5 le brindaba ocasión al peticionario para hacer los planteamientos que estimase convenientes al amparo del debido proceso de ley. 3 L.P.R.A. sec. 341p.

■ Respecto a la segunda cuestión, tampoco entendemos que la ley forzosamente requiere el resultado que el peticionario desea. El esquema estatutario faculta al Departamento para emitir órdenes previa notificación y vista o sin vista cuando pueda causársele al consumidor grave daño inmediato. 3 L.P.R.A. sec. 341*l.* Cualquier parte adversamente afectada por una decisión del Secretario, como hemos advertido, puede solicitar su reconsideración, 3 L.P.R.A. sec. 341o, y, de no estar conforme con lo que se resuelva, recabar revisión judicial. 3 L.P.R.A. sec. 341p. La política estatutaria, en vez de su semántica, da una medida usualmente más fiel de su significado. Davis, F. B., *Administrative Law— Today and Tomorrow,* 22 J. Pub. L. 345, 352 (1973). La Exposición de Motivos de la Ley Núm. 5 de 23 de abril de 1973 expresa:

"·   ·   ·   ·   ·   ·   ·   ·

Puerto Rico ha entrado de lleno en 'la sociedad del consumo';

a donde el interés del consumidor se identifica con el interés público. Sin embargo, a pesar de la posición de importancia que ocupa el consumidor, frecuentemente se ignoran sus problemas o pasan inadvertidos o las soluciones y remedios son tardíos. . . .

.     .     .     .     .     .     .     .

Es por ello necesario e imperativo crear una estructura, de la más alta jerarquía, a nivel de gabinete, con el objeto de garantizar al consumidor la debida atención a sus problemas y para efectuar una mejor coordinación de los recursos disponibles al gobierno en el desarrollo e implementación de una política pública. . . ."

La Ley Núm. 5 persigue claramente el propósito de amparar a los consumidores contra remedios tardíos, mas sin dejar de brindarles a los querellados todas las garantías del debido proceso de ley. En este caso—e igual a éste debe haber muchos —el Departamento hizo un esfuerzo, de acuerdo con la ley, de notificar al querellado, remitiéndole la documentación a su última dirección conocida. No hemos hallado constancia de que la intención del legislador en estas situaciones sea impedir que se brinde la necesaria oportunidad de vista en la etapa de la reconsideración. Por lo contrario, estimamos que la propia razón de ser del estatuto hace limpiamente permisible la notificación de la orden administrativa y no de la querella en casos análogos al presente. El querellado puede decidir acatarla y, en caso contrario, no se vulnera su derecho a solicitar la celebración de una vista. El efecto de esta interpretación es simplificar los procedimientos y evitar los remedios tardíos, que es precisamente el propósito de la Ley Núm. 5, según se declara en ella expresamente.[1] El caso

---

[1] La posibilidad de remedios tardíos en estos casos es una realidad que a todas luces preocupó al legislador. Véase la Exposición de Motivos de la Ley Núm. 87 de 16 de junio de 1974, 12 *Servicio Legislativo de Puerto Rico*, pág. 433 (1974). Valga señalar que al comenzar el año 1974–75 había 4919 querellas pendientes de resolver en el Negociado de Querellas e Investigaciones y durante ese año se recibieron 5135 querellas. Véase Informe Anual del Año Fiscal 1974–75 del Negociado de Querellas e Investigaciones. El Negociado de Asuntos Legales celebró 5161 vistas

actual es un ejemplo vivo de lo que puede y no debe ocurrir. He aquí una querella que data del 10 de noviembre de 1971 y el consumidor todavía está en espera, le asista o no la razón eventualmente, de que terminen de dirimirse las controversias procesales surgidas.

■ Respecto a la última cuestión, estimamos que el peticionario no tenía derecho constitucional ni estatutario a la inacción. La Ley Núm. 87 de 26 de junio de 1974 enmendó el Art. 17 de la Ley Núm. 5, sustituyendo las palabras "por una resolución u orden" por la frase "por una decisión en reconsideración." Dicho artículo lee así:

"(a) Cualquier parte adversamente afectada por una decisión en reconsideración del Secretario o del funcionario que éste designe a tenor con el inciso (d) de la sec. 341e de este título podrá solicitar la revisión judicial de dicha decisión al Tribunal Superior del Estado Libre Asociado de Puerto Rico, en la Sala del Tribunal Superior correspondiente a la residencia del perjudicado, mediante un recurso emitido por el Tribunal a su discreción. La solicitud de revisión deberá ser radicada ante el Tribunal Superior dentro de los quince (15) días a partir de la fecha de la notificación de la referida decisión."

En la Exposición de Motivos de la Ley Núm. 87 de 1974 se señala que el propósito de esta enmienda es aclarar "que la reconsideración es de carácter jurisdiccional. . . ." 12 *Servicio Legislativo de Puerto Rico*, pág. 434 (1974). La enmienda de 1974 aclaró por tanto que para poder acudir a los tribunales en revisión judicial de una orden administrativa del Departamento es necesario primero solicitar la reconsideración al nivel administrativo. No puede concebirse que la intención legislativa fue prohibirle el acceso a los tribunales, en revisión judicial bajo los procedimientos establecidos en la ley,

administrativas durante el año fiscal 1974–75 y tuvo que intervenir en los tribunales de justicia en 1011 ocasiones. Véase Informe Anual de 1974–75 del Negociado de Asuntos Legales del Departamento de Asuntos del Consumidor.

a un querellado que no solicita primero la reconsideración pero permitirle dicho acceso, en la etapa de poner en vigor la orden administrativa, a un querellado que tampoco solicitó reconsideración.

▪ Entendemos, en vista de lo anterior, que la Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 L.P.R.A. secs. 341o y 341p, provee un remedio exclusivo para el planteamiento por el peticionario de sus puntos de vista. Jaffe y Nathanson, *Administrative Law*, 1968, pág. 356 *et seq.* El peticionario rehusó valerse de él, permitiendo así que la orden administrativa se convirtiese en firme y ejecutoria. Debe ahora cumplirla o sujetarse al correspondiente proceso de desacato.

*Se anulará el auto expedido y se devolverán los autos al tribunal de instancia para hacer cumplir la orden administrativa.*

El Juez Asociado Señor Martín no intervino. El Juez Asociado, Señor Díaz Cruz, disiente en voto separado. El Juez Asociado, Señor Negrón García concurre en el resultado sin opinión.

—O—

Voto disidente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 6 de noviembre de 1975

Con un bien intencionado propósito de evitar que una querella de consumidor iniciada en el 1971 y adjudicada en rebeldía retorne ahora a la etapa inicial de vista, la mayoría sacrifica el debido proceso de ley. Dispone la Ley Orgánica del Departamento de Asuntos del Consumidor en su artículo identificado como 3 L.P.R.A. sec. 341*l*(b) y (e)

"El Secretario, o el funcionario que éste designe a tenor con el inciso (d) de la sec. 341e de este título, tendrá facultad para emitir las siguientes sanciones y órdenes:

(a) .    .    .    .    .    .    .    .

(b) Previa notificación y vista podrá emitir órdenes para cesar y desistir, y prescribir los términos y condiciones correctivas que por la evidencia a su disposición y a tenor con el derecho aplicable determine que son en beneficio del consumidor. Cuando en el criterio del Secretario se cause o se pueda causar un grave daño inmediato a los consumidores o a un consumidor en particular, podrá emitir dicha orden, de carácter provisional, obviando el requisito de celebrar una vista. Dentro de los diez (10) días posteriores a la emisión de dicha orden provisional, el Secretario deberá celebrar una vista administrativa en la que resolverá si dicha orden provisional se hace permanente o se revoca. Las órdenes emitidas bajo este inciso serán notificadas a la persona que corresponda en su sitio de negocios o por correo certificado a su última dirección conocida.

(e) El Secretario podrá recurrir al Tribunal Superior de Puerto Rico en solicitud que se ponga en vigor cualquier orden de cesar y desistir por él emitida o cualquier orden correctiva. El incumplimiento de una orden judicial declarando con lugar tal solicitud constituirá desacato al Tribunal." (¹)

Disiento de la opinión en cuanto propone que toda vez que al peticionario se le dieron dos oportunidades de solicitar reconsideración, aunque ninguna de ser oído en "vista", se satisface el debido proceso de ley.

Soy partidario de que se amplíe la función y utilidad de las agencias administrativas, pero no a costa de básicas garantías de legalidad. La esencial alegación del recurrente de que nunca se le notificó o convocó para vista no fue confrontada por la agencia con prueba de fácil producción, sobre el cumplimiento de este básico requisito jurisdiccional.

En nuestro método de asegurar audiencia a la parte afectada, aun la citación por una leve infracción de la Ley de

---

(¹) Aun cuando la transcrita disposición ordenando vista previa (3 L.P.R.A. sec. 341*l*(b) se adoptó por Ley Núm. 5 de 23 de abril de 1973 y este caso data de 1971, la exigencia de oír antes de decidir tiene una fundamental validez que trasciende los estatutos que la implementan. Nótese que el legislador se cuidó de exigir *vista* aun en los casos de emergencia en que se permite una *orden provisional* de sólo diez días de duración.

Tránsito se efectúa mediante la notificación personal que es la más confiable, eficaz y sencilla. Ahora que la abrumadora masa de trabajo muchas veces ahoga la eficiencia del correo y que existe una reiterada queja contra la dejadez burocrática, este Tribunal escoge la notificación por la vía postal como medio de emplazamiento por las agencias administrativas. Frente al planteamiento tenaz de un ciudadano insistiendo que nunca se le dio oportunidad de ser oído antes de que se adjudicara la reclamación en su contra, la mayoría santifica la pasividad de un organismo que no se sintió obligado a presentar prueba de que al menos la citación o la carta de aviso se depositó por alguien en el correo. Sobre esta anomalía se erige el aparato coactivo del Estado y el reclamo de privar de su libertad por desacato al contratista recurrente. ¿A tan lastimoso estado ha descendido el "debido proceso de ley" que da estilo y calidad a nuestro orden constitucional?

La agencia en este caso oyó a una sola parte y la primera noticia que del proceso tiene el contratista es una orden (*fait accompli*) para que corrija los defectos o pague $3,697.00. El angosto canal de la reconsideración y de la revisión nunca provee la plena audiencia, el derecho a repreguntar y a presentar su propia prueba, que sólo se logra en la vista. No es el ciudadano quien tiene que solicitar la vista, corresponde al Estado proveerla y convocar a ella *antes* de emitir decisión alguna en el asunto. "El derecho constitucional a un debido proceso de ley exige concesión de vista, previa oportuna y adecuada notificación, derecho a ser oído confrontándose con los testigos de cargo y a presentar prueba y argumentos en su defensa. *Morrisey* v. *Brewer*, 408 U.S. 471, 487 (1972); *Goldberg* v. *Kelly*, 378 U.S. 254, 267–8 (1970)."*Ortiz Cruz* v. *Junta Hípica*, 101 D.P.R. 791, 795 (1973); *Armstrong* v. *Manzo*, 380 U.S. 545, 552 (1965); *Boddie* v. *Connecticut*, 401 U.S. 371, 378–9 (1971).

Los mecanismos de reconsideración y revisión que la opinión mayoritaria ofrece como sustitutos de la audiencia

operan una vez adquirida la jurisdicción. Pero precisamente el planteamiento del recurrente es que la falta de notificación de vista impidió el ejercicio de jurisdicción.

Anularía la resolución recurrida.