# 2000 DTA 145

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE CAROLINA-FAJARDO

ASOCIACION DE RESIDENTES DE LA URBANIZACION LAS GAVIOTAS
Recurrente

v.

JUNTA DE PLANIFICACION DE PUERTO RICO
Recurrida

Núm. KLRA-2000-00253

San Juan, Puerto Rico, a 15 de junio de 2000

Panel integrado por su Presidente, Juez Miranda De Hostos
y los Jueces Rivera Pérez y Rodríguez García

Miranda De Hostos, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte recurrente solicita que revoquemos ciertas resoluciones emitidas por la Junta de Planificación (Junta), en las cuales aprobó una consulta de ubicación de un proyecto residencial.

Alega que erró la agencia recurrida al aprobar el proyecto sin la previa notificación del mismo a los recurrentes y sin haber celebrado vista antes de emitir su dictamen.

Considerado el recurso de revisión judicial, se expide el auto, y se deja sin efecto los dictámenes emitidos por los siguientes fundamentos.

### I

El 6 de abril de 1998, la parte proponente-recurrida, Marina Las Gaviotas Corporation, presentó ante la Junta de Planificación una consulta de ubicación para un proyecto de desarrollo extenso mixto en la finca objeto de controversia. Originalmente, el proyecto consistía en la ubicación de un desarrollo mixto en el cual se proponía la construcción de treinta (30) apartamentos tipo "*walk ups*" y cuarenta y ocho (48) apartamentos en un edificio multipisos con ciertas áreas comerciales. (Ap. 5, pág. 22)

Mediante resolución del 13 de mayo de 1998 notificada el 1 de julio de 1998, la Junta dejó en suspenso la consulta, ya que determinó recibir los comentarios de las instrumentalidades públicas concernidas y llevar a cabo una audiencia pública a los fines de escuchar los planteamientos de todos los interesados en el establecimiento del referido proyecto. Solicitó, además, que se les suministrara las direcciones postales de todos los dueños de propiedades que radican dentro de una distancia de cien (100) metros. Valga señalar que la vista pública no se celebró, pues la Junta dispuso de la consulta por el expediente, una vez las partes concernidas, con exclusión de la peticionaria, presentaron por escrito sus posiciones. (Ap. 6, pág. 46)

El 29 de junio de 1998, la parte proponente solicitó enmienda a la consulta que consistió en eliminar el área comercial de su propuesta y propuso, además, que el proyecto fuera de setenta y ocho (78) apartamentos consistiendo de sesenta (60) apartamentos de dos (2) habitaciones y dieciocho (18) de tres (3) habitaciones. En la memoria descriptiva presentada originalmente, la proponente señaló que la zonificación del área era A-3, pero que la zonificación requerida era Mixta RT-4 y CT-4. Sin embargo, en su recurso, la parte recurrente señala que la zonificación requerida de CT-4 fue enmendada posteriormente al eliminar la solicitud del área comercial en el primer y segundo nivel del edificio multipisos propuesto. (Ap. 7, pág. 49)

La Junta emitió resolución, el 16 de julio de 1998, notificada el 28 de julio de 1998, dejando en suspenso la consulta, dado las enmiendas solicitadas. (Ap. 8, pág. 53)

Mediante resolución del 16 de junio de 1999, notificada el 1 de julio de 1999, la Junta autorizó el proyecto de urbanización de setenta y ocho (78) apartamentos, sin la celebración de una vista pública. (Ap. 1, pág. 1) No obstante, posteriormente, la parte proponente solicitó que se le permitiera establecer la misma densidad de vivienda, pero con treinta (30) apartamentos de una (1) habitación y sesenta (60) habitaciones de dos (2) habitaciones, elevando así la cantidad de apartamentos a noventa (90). Dicha solicitud fue autorizada por la Junta, el 1 de septiembre de 1999 y notificada el 13 de septiembre de 1999, para emitir dicho dictamen; no se celebró vista pública. (Ap. 2, pág. 8)

El Departamento de Agricultura, una de las agencias que se expresó en torno al proyecto y que no objetó el mismo, indicó que el predio objeto de consulta ubica en un área de marcado desarrollo residencial, comercial y turístico y que en su periferia inmediata no se observan proyectos agrícolas de impacto económico.

El 25 de febrero de 2000, la Asociación de Residentes de la Urbanización Las Gaviotas (Asociación), presentó moción solicitando se le permitiera intervenir en el procedimiento llevado a cabo ante la Junta. Alegó

que a pesar de que las residencias de la urbanización quedan a una distancia menor de cien (100) metros del proyecto propuesto, nunca les fue notificada la radicación de la consulta ni resolución alguna emitida por la Junta. A tales fines, presentó una declaración jurada para sustentar su posición de la falta de notificación a la Asociación o los residentes de la urbanización Las Gaviotas. Este hecho no ha sido controvertido por la Junta o la parte recurrida. (Ap. 3, págs. 9-12)

Presentó además, moción solicitando reconsideración de la determinación emitida por la agencia y en auxilio de jurisdicción, solicitando se le ordenara a la proponente que cesara y desistiera de continuar con las obras de construcción del proyecto. (Ap. 4, pág. 13)

Habiendo transcurrido el término sin que la Junta actuara sobre la solicitud de la recurrente, ésta acude ante nos mediante recurso de revisión radicado el 1ro. de abril de 2000. Aduce que erró la Junta al aprobar la consulta de ubicación sin que la proponente haya justificado su proyecto a tenor con el Reglamento de Zonificación de la Junta de Planificación, y al autorizarlo, sin la previa notificación del mismo a los recurrentes, como partes afectadas.

Examinado el recurso de revisión con la oposición de la Junta y sin que Marina Las Gaviotas Corp. presentara su oposición, luego de concedérsele tiempo para ello, procedemos a resolverlo, conforme la norma jurídica imperante. Veamos

## II

La sección 47.01 del Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4, (Reglamento de Zonificación), prescribe que los Distritos A-3 se establecen para identificar áreas utilizadas o con potencial reconocido para ser utilizadas en actividades agropecuarias. La sección 47.02 establece los usos permitidos en dichos distritos. Entre ellos, están usos agrícolas; viviendas para una familia; usos y edificios accesorios estrechamente relacionados o complementarios al uso principal de la propiedad; y otros usos de acuerdo a lo establecido en la sección 99.00 de dicho Reglamento.

La referida sección 99.00 establece los usos que la Junta, por vía de excepción, puede considerar en determinados distritos. Uno de los usos para los cuales la Junta puede considerar una consulta en un distrito A-3, es si se trata de viviendas adicionales para familias que trabajan en la finca, siempre que no conlleve la segregación del solar en que ubique la vivienda. Sección 99.05(21) del Reglamento de Zonificación.

De manera similar, la sección 7.03 del Reglamento de Zonificación Especial para las Zonas No Urbanas de los municipios circundantes al Bosque Nacional del Caribe (El Yunque), (Reglamento de Zonificación Especial), establece los usos principales y accesorios para los cuales pueden ser utilizados dichos distritos. Los usos principales se refieren a usos de naturaleza agrícola como la siembra y la cría de ganado. Entre los usos accesorios que podrían considerarse, la sección señala que se podrán utilizar para casas de una o dos familias. Dispone, además, que se le pueden dar otros usos de acuerdo con lo establecido en la sección 18.04 del mismo Reglamento que trata sobre excepciones permitidas.

La sección 18.04 de dicho Reglamento de Zonificación Especial, establece que la Junta podrá considerar consultas de ubicación y usos de terrenos en Distritos A-3 enumerados en dicha sección, cuando los beneficios que derivaría la comunidad mediante el uso propuesto han de ser mayores que los que ésta obtendría si los terrenos fuera dedicados a la agricultura en general. En caso de duda, dispone dicha sección del Reglamento que la Junta podrá celebrar vistas públicas para esclarecer los objetivos perseguidos. Entre los usos permitidos, se encuentran: (a) comunidades residenciales; (b) desarrollo vacacionales; (c) desarrollos turísticos; (d) cementerios; (e) industria liviana; f) parques de diversiones, cine al aire libre, galleras y cualquier otra actividad determinada como centros de recreación comercial extensa; (g) ferreterías; (h) vertederos; y (i) funerarias.

Por otra parte, según la sección 95.00 del Reglamento de Zonificación, la Junta tiene la facultad de

considerar proyectos de desarrollo extensos que requieran el desarrollo de obras de urbanización de terrenos. Conforme la sección 97.02, los terrenos en los cuales se propone un proyecto de desarrollo residencial extenso estarán localizados o colindando con el área desarrollado dentro del ámbito de expansión urbana del municipio o dentro de una zona de interés turístico.

En estos casos, requiere el Reglamento de Zonificación que se celebre vista pública con notificación a los dueños de los terrenos circundantes, *"[c]uando el desarrollo residencial extenso tenga acceso a una calle municipal a la cual den frente más de diez (10) estructuras residenciales en una distancia de doscientos cincuenta (250) metros, medidos desde la entrada del proyecto, y siempre que la densidad propuesta sea mayor que la del área propuesta."* Sección 97.02(3) del Reglamento de Zonificación.

La Junta de Planificación es el organismo especializado encargado de proteger los intereses y el bienestar de los ciudadanos y desarrollar la política pública de planificación y zonificación integral del país. *Asoc. Res. Parkside, Inc. v. Junta de Planificación*, opinión de 15 de diciembre de 1998, **98 J.T.S. 156**, pág. 380; *The Richards Group v. Junta de Planificación*, 108 D.P.R. 23, 30 (1978) (Casos citados).

Se ha reconocido por nuestro más alto foro que para que se active la protección del debido proceso de ley, tiene que existir un interés propietario o de libertad que se vea afectado. La principal característica del debido proceso de ley es que sea un procedimiento justo y que se le brinde a las partes la oportunidad de ser escuchados y de defenderse. *Unión Independiente de Empleados de la Autoridad de Edificios Públicos v. Autoridad de Edificios Públicos*, opinión de 13 de agosto de 1998, ___ D.P.R. ___, **98 J.T.S. 111**, pág. 51.

El debido proceso de ley no requiere una vista previa a toda privación de un derecho o interés propietario; basta que en algún momento significativo, la parte tenga la oportunidad de presentar su posición; inclusive, esto puede ser en la etapa de reconsideración. *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 730 (1992); *Rodríguez v. Tribunal Superior*, 104 D.P.R. 335, 340 (1975).

En los trámites ante los foros administrativos, se ha reconocido que se debe conceder de manera liberal la intervención, cuando el que así lo solicita establece que: (1) sus intereses pueden quedar afectados; (2) no existen otros medios para protegerlos; (3) el interés puede estar adecuadamente representado; y (4) la intervención puede ayudar a dilucidar la controversia y no la dilate innecesariamente. *Rivera Ramos v. Morales Blas*, opinión de 2 de noviembre de 1999, ___ D.P.R. ___, **99 J.T.S. 170**, pág. 350.

Por último, pero no menos importante, una agencia administrativa viene obligada a observar estrictamente sus propios reglamentos. *Cotto Guadalupe v. Departamento de Educación, supra*, pág. 973. La Junta de Planificación tiene el deber de velar que los requisitos de notificación establecidos en su propio Reglamento sean cumplidos estrictamente. *Montoto Pratts v. Pelayo Lorie*, opinión de 11 de marzo de 1998, ___ D.P.R. ___, **98 J.T.S. 25**, pág. 662.

### III

Bajo la norma jurídica antes comentada, procedemos a discutir los hechos ante nos.

### -A-

Aduce la recurrente que erró la Junta al aprobar la consulta de ubicación, toda vez que el proyecto propuesto no era permitido conforme la reglamentación pertinente.

No tiene razón. Veamos.

El Reglamento de Zonificación, aunque establece como uso primordial de los Distritos A-3 actividades agrícolas, provee para otros usos que se pueden considerar en el área como lo son viviendas de una familia y, por vía de excepción, viviendas adicionales para familias que trabajan en la finca.

El Reglamento de Zonificación Especial establece en adición otros usos que por vía de excepción pueden ser considerados en solicitudes de consulta y que nada tienen que ver con usos agrícolas. Específicamente, dispone que entre los usos permitidos, se encuentran el desarrollo de comunidades residenciales, vacacionales, turísticos y parques de diversiones.

Obsérvese que los ejemplos mencionados en nada se relacionan con la utilización agrícola de los terrenos. Por lo tanto, no procede lo alegado por la parte recurrente en cuanto a que el proyecto propuesto era uno no permitido por la reglamentación pertinente. Además, contrario a lo que alega la parte recurrente, no se trata aquí de una variación, sino de una excepción permitida.

**-B-**

Otro error señalado por la parte recurrente es la falta de notificación en torno a el propuesto proyecto a los vecinos del área.

Este error fue cometido por la Junta y es suficiente para dejar sin efecto el dictamen revisado. Veamos porqué.

Se trata el recurso de un proyecto de desarrollo extenso, conforme la sección 97.00 del Reglamento de Zonificación, que se encuentra en un área de marcado desarrollo residencial, comercial y turístico, según lo expusiera el Departamento de Agricultura.

Aplicando las disposiciones del Reglamento de Zonificación, era requisito la celebración de una vista y la notificación de la misma a los dueños de los terrenos en una distancia de doscientos cincuenta (250) metros. Además, el Reglamento de Zonificación Especial dispone que la Junta podrá celebrar vistas públicas para esclarecer los objetivos de una consulta.

No surge de los documentos ante nos que los recurrentes, quienes se encuentran dentro de los doscientos cincuenta (250) metros del proyecto, fueran notificados de la celebración de vista alguna ni del proyecto que fuera aprobado. Los recurrentes tienen un interés afectado y, conforme al debido proceso de ley y la reglamentación de la Junta, era requisito que los mismos fueran notificados y escuchados antes de aprobarse el mismo, lo cual pudo haberse llevado a cabo, inclusive, en la etapa de reconsideración.

Es necesario el señalar que de los documentos ante nos, surge que la Junta, el 1 de julio de 1998, había dejado en suspenso la consulta para llevar a cabo una audiencia pública a los fines de escuchar los planteamientos de todos los interesados y afectados en el establecimiento del referido proyecto. Que aun cuando la Junta había reconocido que procedía la celebración de una vista pública, donde se citaran a todos los dueños de propiedades dentro de una distancia de cien (100) metros, aprobó la consulta sin cumplir dicho trámite previamente pautado.

**IV**

Por los fundamentos que anteceden, se expide el recurso de revisión. Se suspenden las resoluciones de la Cuarta y Quinta Extensión de la Consulta Núm. 98-24-0373-JPU.

Se devuelve el recurso a la Junta de Planificación para que se le permita a la parte recurrente presentar su posición y celebrar una audiencia pública, según lo había pautado previamente. Una vez cumplido el trámite antes mencionado, la Junta deberá emitir una resolución debidamente fundamentada y así deberá notificarla, conforme a derecho.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General