EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Vinicio Almonte y Clemencia Leduc, et al.<br>    Peticionarios<br><br>        v.<br><br>Alejandrino Brito y/o Estancias Reales, S.E.<br>   Recurridos | Certiorari<br><br>2002 TSPR 37<br><br>156 DPR \_\_\_\_ |

Número del Caso: CC-2002-100
     Cons. con: CC-2002-113, CC-2002-114

Fecha: 2/abril/2002

Tribunal de Circuito de Apelaciones:
                        Circuito Regional I

Panel integrado por su Presidente, el Juez Gierbolini, el Juez Cordero y el Juez Rodríguez Muñiz

Abogadas de la Parte Peticionaria:
                        Lcda. Xaíra L. Santiago Acosta
                        Lcda. María Elisa Arroyo Ramos

Abogado de la Parte Recurida:
                        Lcdo. Edilberto Berríos Dávila

Abogadas del Departamento de Asuntos del Consumidor:
                        Lcda. Mónica Figueroa Ramos
                        Lcda. Mayra I. Martínez Pérez

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Vinicio Almonte y Clemencia
Leduc, *et al.*

    **Peticionarios**

        v.

**Alejandrino Brito y/o
Estancias Reales, S.E.**

    Recurridos

|  |  |
|---|---|
| CC-2002-100 | |
| CC-2002-113 | Certiorari |
| CC-2002-114 | |
| **Cons.** | |

**PER CURIAM**

**(Regla 50)**

**San Juan, Puerto Rico a 2 de abril de 2002.**

**I**

    **Los esposos Vinicio Almonte y Clemencia Leduc; Rafael Martínez y Dannette Ortiz; Minnie A. González y Miguel Arroyo (en adelante "los peticionarios")[1], respectivamente, convinieron con Estancias Reales, S.E. (en lo sucesivo Estancias Reales), sendos contratos de opción para la compra de unas residencias en la Urbanización Palma Real en Guaynabo, Puerto Rico. Los contratos uniformes de opción a compra (tipo formulario aprobado por**

---

[1] El Departamento de Asuntos del Consumidor (en adelante DACO), es, además, el peticionario en el recurso CC-2002-113.

DACO fueron otorgados en 1997 y 1998, fijando a su vez un precio tentativo de venta que oscilaba entre $365,775.00 y $436,850.00.

Los días 6 y 17 de julio de 2000, Estancias Reales notificó a las partes un aumento de cuarenta y un mil dólares ($41,000.00) al precio de venta. Luego, los días 26 de julio de 2000 y 2 de agosto de 2000, Estancias Reales entregó a los peticionarios una carta indicándoles que debían comparecer a sus oficinas los días 2, 3 y 9 de agosto de 2000 para otorgar las escrituras de compraventa respecto a las propiedades objeto de los contratos de opción antes señalados. Además, les indicó que de no otorgar las escrituras en o antes del 27 de agosto de 2000 y el 3 de septiembre de 2000, procederían a cancelar los contratos de opción.

Por entender que el aumento en el precio de venta no estaba justificado, los peticionarios presentaron ante DACO sendas querellas en contra de Estancias Reales y/o su representante de ventas, el Sr. Alejandro Brito. Alegaron que éstos incumplieron el contrato y solicitaron que se les ordenara honrar el precio de venta acordado.[2]

El 3 de agosto de 2000, DACO emitió una orden provisional de cese y desista en contra de Estancias Reales, respecto a los contratos de opción y de compraventa de las partes querellantes, y señaló una vista para el día 14 de agosto de 2000. Concluyó que, "[a] base de los preceptos legales antes señalados, existe justa causa para señalar una vista administrativa con carácter urgente para dilucidar las querellas presentadas contra la parte querellada . . . ."[3] Además, dispuso lo siguiente:

> EN LA VISTA LAS PARTES HARAN TODAS LAS ALEGACIONES Y PRESENTARAN TODA LA PRUEBA DOCUMENTAL Y TESTIFICAL QUE CONSIDEREN NECESARIAS PARA SU CASO. SE LES APERCIBE QUE ESTA SERA LA UNICA OPORTUNIDAD QUE TENDRAN PARA LA DISCUSION PLENA DEL MISMO, POR LO QUE DEBERAN TRAER TODA LA PRUEBA PERTINENTE A SU CASO PARA ESTA VISTA. NO SE DARA OPORTUNIDAD POSTERIOR PARA TRAER PRUEBA ADICIONAL.[4]

El 9 de agosto de 2000, Estancias Reales solicitó la posposición de la vista y alegó que aun cuando ya había hecho acopio de la prueba a ser presentada, no podía comparecer a ésta ya que su representación legal debía comparecer a otra vista previamente señalada en un caso ante el Tribunal de Primera Instancia. Mediante *Notificación y Citación* de 15 de agosto de 2000, DACO concedió la petición de Estancias Reales y procedió a señalar una nueva vista para el 25 de agosto de

---

[2] Los matrimonios Almonte-Leduc y González-Arroyo presentaron sus respectivas querellas el 24 de julio de 2000; el matrimonio Martínez-Ortiz presentó la suya el 21 de agosto de 2000.

[3] Notificación y Orden de 3 de agosto de 2000, emitida por DACO. (Énfasis suplido.)

[4] *Íd.* (Subrayado nuestro.)

2000, "bajo los mismos apercibimientos de la notificación original."[5] (**Énfasis suplido.**)

Llegada esa fecha, Estancias Reales, por primera vez, puso a disposición de los peticionarios la prueba documental según requerida por DACO. Dado el volumen de la prueba, los peticionarios solicitaron la suspensión de la vista, razón por la cual DACO procedió a señalarla para el 30 de agosto de 2000, quedando las partes notificadas en la vista de la nueva fecha. El señalamiento fue además notificado por escrito el 29 de agosto de 2000, reiterando que ésta sería la única oportunidad que tendrían las partes para la discusión plena de sus alegaciones.

Finalmente, el 30 de agosto de 2000, y los días 1, 5, 8 y 14 de septiembre de 2000 se celebró la vista concernida. Las partes presentaron abundante prueba documental y testifical. El 5 de diciembre de 2000, DACO emitió una extensa Resolución, en la cual ordenó a Estancias Reales realizar los trámites correspondientes para el otorgamiento de las escrituras de compraventa y que, además, honrara el precio originalmente pactado.

Por no estar conforme con la determinación de DACO, Estancias Reales recurrió ante el Tribunal de Circuito de Apelaciones (TCA) mediante recurso presentado el 22 de enero de 2001. Alegó que DACO cometió los siguientes errores: 1) evaluar el caso en sus méritos, negándole de esta forma el debido proceso de ley; 2) resolver que los incrementos en los costos de construcción que a su vez no conllevaron cambios en los planos, no podían ser considerados en la determinación del precio de venta definitivo; y 3) resolver que la cláusula 6 del contrato de opción impedía la notificación de un aumento en el precio de venta, dado que había transcurrido un año a partir de la fecha en que se suscribió el mismo. Además, arguyó que las determinaciones de DACO manifiestan pasión, prejuicio, parcialidad y error manifiesto. El 27 de noviembre de 2001, el TCA revocó la determinación de DACO por entender que se había violado el derecho de Estancias Reales a un debido proceso de ley.

Inconforme con la determinación del TCA, recurren los peticionarios ante nos mediante peticiones de *certiorari* presentadas el 31 de enero de 2002 y el 4 de febrero de 2002. Vinicio Almonte y Clemencia Leduc, y Rafael Martínez y Dannette Ortiz comparecieron mediante el recurso CC-2002-100; DACO compareció mediante el recurso CC-2002-113; y Minnie González Ríos y Miguel Arroyo comparecieron mediante el recurso CC-2002-114. En síntesis, los peticionarios alegan que el TCA erró al determinar que DACO despojó a Estancias Reales de su derecho a un debido proceso de ley.

---

[5] *Notificación y Citación* de 14 de agosto de 2000 emitida por DACO.

El 19 de febrero de 2002, Estancias Reales presentó ante nos un escrito en el que solicita la consolidación y se opone a los recursos presentados.  Alega que la determinación del TCA fue correcta y que efectivamente le fue negado el debido proceso de ley, dado que entiende que la vista era sobre una orden de entredicho provisional y no una para discutir las querellas en sus méritos.  Alega que DACO nunca expresó que en la vista se adjudicarían las querellas en sus méritos.

Examinadas las peticiones de *certiorari* y sus apéndices, así como el escrito presentado por Estancias Reales, consolidamos los recursos por estar estrechamente relacionados entre sí, expedimos el auto y resolvemos sin trámite ulterior, a tenor de la Regla 50 del Reglamento de este Tribunal.  R. TSPR 50, 4 L.P.R.A. Ap. XXI-A.

## II

Con el propósito de proveer un sistema adjudicativo económico, rápido y práctico se delegaron a las agencias administrativas poderes cuasijudiciales. *López y otros v. Asoc. de Taxis de Cayey*, 142 D.P.R. 109, 113 (1996); *D.A.C.O. v. J. Condóminos C. Martí*, 121 D.P.R. 807, 821 (1988). Esta delegación favorece a su vez un proceso ágil y sencillo, propiciando su uso eficiente por las personas legas. *López y otros v. Asoc. de Taxis de Cayey*, supra; *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194, 202 (1987); *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 231 (1987).

En vista de que dentro de su función adjudicativa las agencias administrativas han de interferir con los intereses de libertad y propiedad de los individuos, se hace extensiva a los procedimientos ante éstas la garantía a un debido proceso de ley.  En su vertiente procesal, el debido proceso de ley requiere que la intervención del Estado sea a través de un procedimiento justo y equitativo. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 887-888 (1993); *López Vives v. Policía de P.R.*, supra.  Una vez está en juego un interés individual de libertad o propiedad hay que determinar cuál es el procedimiento exigido (*what process is due*), el cual dependerá de las circunstancias dadas; salvaguardando siempre que el mismo sea justo e imparcial, no arbitrario. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, a la pág. 888.

Ya que el objetivo de la adjudicación administrativa es proveer un sistema justo, práctico y flexible, hemos reconocido que las normas del debido proceso de ley no se aplican dentro del campo administrativo con la misma rigurosidad que se aplican dentro de la adjudicación judicial. *López y otros v. Asoc. de Taxis de Cayey*, supra; *Pérez Ríos v. Hull Dobbs*, 107 D.P.R. 834, 840 (1978).  Al respecto, hemos establecido que, "[e]l debido proceso no es un 'molde rígido que prive de flexibilidad' a los organismos administrativos . . ." *López Vives v. Policía de*

*P.R.*, supra, a la pág. 230; *Rodríguez v. Tribunal Superior*, 104 D.P.R. 335, 340 (1975).

Se han hecho extensivas a los procedimientos administrativos las siguientes garantías tradicionalmente reconocidas: la concesión a una vista previa, oportuna y adecuada notificación, derecho a ser oído, confrontarse con los testigos, presentar prueba oral y escrita a su favor, y la presencia de un adjudicador imparcial. *López y otros v. Asoc. de Taxis de Cayey*, supra; a la pág. 114; *Henríquez v. Consejo Educación Superior*, supra; *Ortiz Cruz v. Junta Hípica*, 101 D.P.R. 791, 795 (1973).

La Sec. 3.1 de la Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2151, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en lo sucesivo LPAU), reconoce las garantías antes señaladas.

En cuanto a la notificación de la vista administrativa, la Sec. 3.9 de la LPAU, 3 L.P.R.A. sec. 2159, requiere que se notifique a todas la partes por escrito haciendo constar la fecha, hora y lugar en que se celebrará la vista adjudicativa. **"La notificación se deberá efectuar por correo o personalmente con no menos de quince (15) días de anticipación a la fecha de la vista,** excepto que por causa debidamente justificada, consignada en la notificación, sea necesario acortar dicho período . . ." *Íd.* **(Énfasis suplido.)**

En *Depto. Rec. v. Asoc. Rec. Round Hill*, res. el 19 de agosto de 1999, 149 D.P.R. __, 1999 TSPR 135, 99 JTS 138, a la pág. 28, expresamos que el término dispuesto por la Sec. 3.9 de la LPAU, *supra*, es de cumplimiento estricto, y que el propósito del mismo es permitir que las partes se preparen adecuadamente para la vista administrativa. Respecto a la reducción del término de quince (15) días para la notificación, el Prof. Demetrio Fernández Quiñones señala lo siguiente:

> El período de quince días puede ser acortado por causa debidamente justificada. La reducción del período no puede ser de tal magnitud que le afecte al querellado su derecho a preparar su defensa, bien en lo referente a contestar la querella como a la disponibilidad de la prueba oral o documental que necesite presentar el día de la vista. El criterio aplicable es el de razonabilidad. De hecho, no existe una regla mecánica que gobierne lo acertado y adecuado del período que se ha establecido para la celebración de la vista. Esta es la típica cuestión que tendrá que ser resuelta, caso por caso, según los hechos y circunstancias que concurran en cada caso en particular.[6]

En el caso de DACO, tanto el Art. 13 de la Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. sec. 341*l*, conocida como la Ley Orgánica del Departamento de Asuntos del Consumidor (en adelante "la Ley de DACO"), así como la Regla 9 del Reglamento Núm. 6219 de 17 de octubre de 2000 del DACO (en lo sucesivo "el Reglamento de

---

[6] D. Fernández, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Ed. Forum, Sec. 4.2, pág. 148.

DACO"),[7] facultan al DACO a emitir órdenes de cesar y desistir. Previo a emitir una orden de cese y desista, DACO deberá notificar a las partes y celebrar una vista a esos fines. No obstante, el departamento podrá emitir una orden provisional de cesar y desistir sin la celebración de una vista cuando se cause o se pueda causar un daño inmediato a los consumidores o a un consumidor en particular, y requiera la acción inmediata de DACO. Art. 13 de la Ley de DACO, *supra*; Regla 9.1 del Reglamento de DACO, *supra.* Dentro de los diez (10) días posteriores a la emisión de la orden de cesar y desistir, DACO deberá celebrar una vista para discutir la procedencia de dicha orden. *Íd.*

### III

En síntesis, la controversia del caso de autos se centra en si la notificación emitida por DACO informó a Estancias Reales, dentro de los criterios de razonabilidad, que en la vista señalada se discutirían las querellas presentadas en sus méritos; y segundo, si actuó correctamente al seguir el trámite que hoy revisamos.

En este caso, DACO emitió originalmente una orden de cesar y desistir sin vista previa en contra de Estancias Reales, a los fines de evitar que ésta realizara trámite alguno para disponer de las propiedades que los peticionarios habían opcionado. Al así proceder, DACO actuó correctamente dentro del marco de las normas vigentes. Según señaláramos anteriormente, DACO tiene la facultad para emitir este tipo de orden sin la necesidad de celebrar una vista previa, ello en aquellos casos en que se pueda causar un daño inmediato a los consumidores. Surge de los autos que los peticionarios estaban ante una situación en la que podían perder no sólo el dinero invertido hasta ese momento, sino también la residencia que habían proyectado como su nuevo hogar. Sin embargo, lo antes expresado no dispone del asunto antes nos.

En la orden emitida, DACO expuso las razones por las cuales emitió la orden y citó a las partes para que comparecieran a una vista a celebrarse una vez transcurridos once (11) días. Al así citar a las partes, DACO fue enfático al apercibirles de que en la vista se habrían de discutir todas las alegaciones, por lo que debían presentar toda prueba a su haber, por ser esa la única oportunidad que tendrían para la discusión plena de los asuntos. Sin embargo, Estancias Reales insiste en alegar que DACO no le notificó que el propósito de la vista era discutir los méritos de las querellas. No podemos dar crédito alguno a dichos

---

[7] Durante la tramitación del caso de autos en DACO, era de aplicación el Reglamento 5416 de 24 de abril de 1996, 10 R.P.R. sec. 250.1 *et seq.* Las Secs. 4 y 26, 10 R.P.R. secs. 250.2 y 250.24, disponían, respecto a las órdenes de cesar y desistir, de la misma manera que el Reglamento Núm. 6219, hoy vigente.

planteamientos; la orden de DACO es clara y habla por sí sola.  Sin embargo, aun así, debemos determinar si el término entre la fecha de la notificación y la fecha para la cual se pautó la vista cumplía con la LPAU y el debido proceso de ley. Entendemos que sí. Veamos.

Conforme a la Sec. 3.9 de la LPAU, *supra*, la notificación de la celebración de la vista debe ser realizada en un término no menor de quince días de anticipación, excepto que por causa debidamente justificada sea necesario acortar el término.  En tal caso, la causa que justifique dicho proceder debe ser consignada en la notificación.  Como señaláramos anteriormente, no sólo la causa para celebrar la vista dentro de un término menor estuvo justificada, sino que así lo hizo constar la agencia concernida.  A esos fines, expresó lo siguiente:

> [c]onforme al número de querellas presentadas y de los hechos expresados en las mismas, es el criterio de este Departamento que de no atenderse esta situación a tiempo, se podría causar un grave daño inmediato a los consumidores que opcionaron las propiedades a la parte querellada desde los años 1997 y 1998.  Estos se enfrentan a una posible cancelación de sus contratos de opción por parte de la querellada.

Si bien es cierto que el término establecido por la Sec. 3.9 de la LPAU es de cumplimiento estricto, no es menos cierto que se justifica que el mismo sea acortado en casos como el de autos, en los cuales unas familias no sólo están en riesgo inmediato de sufrir una pérdida económica, sino también, en riesgo de ver frustrados sus sueños de establecer su hogar en la residencia anhelada.

Además, debemos notar que cinco (5) días antes de la celebración de la primera vista y al solicitar la suspensión de ésta, Estancias Reales indicó que ya había hecho acopio de la prueba a ser presentada.  No obstante, inconsistentemente, ahora alega que no tuvo la oportunidad de preparar su defensa. Ello nos sorprende aún más, dado el hecho de que fue Estancias Reales quien sin dar explicaciones o justificación alguna aumentó el precio de venta de las propiedades previamente opcionadas.  Entendemos que al determinarse un incremento de $41,000.00 en el valor de una propiedad, el promitente y futuro vendedor debe tener a su haber toda la prueba que justifique dicho aumento; por lo que nos resulta inexplicable que Estancias Reales pretenda que acojamos su planteamiento de que no tuvo la oportunidad de preparar su caso.

Además, la vista fue suspendida en dos ocasiones distintas, brindando a Estancias Reales tiempo adicional para prepararse.  DACO citó nuevamente a las partes y les apercibió que en la vista se discutirían las querellas en sus méritos. Finalmente, la vista se celebró el 30 de agosto de 2000, es decir veintiún (21) días después de haberse emitido la primera notificación, y se extendió la misma cuatro días adicionales, celebrándose la última vista el 14 de septiembre de 2000.

Todas las circunstancias antes señaladas demuestran que DACO dio a Estancias Reales las garantías del debido proceso de ley. Luego de emitir la orden de cese y desista, DACO citó a las partes para discutir la procedencia de ésta. Para ello, DACO tenía que considerar si el incremento en el precio de venta estuvo justificado, asunto central de las querellas presentadas. Al acudir ante DACO, los peticionarios alegaron que Estancias Reales había incrementado de manera arbitraria e injustificada el precio de venta. Arguyeron que dicha actuación constituía un incumplimiento del contrato de opción y solicitaron que le ordenara honrar el precio el precio de venta originalmente pactado.

En vista de lo antes dicho, en casos como éste donde el asunto medular a ser discutido tanto respecto a la orden de cese y desista y las querellas en sus méritos, es si el aumento en el precio de venta estuvo justificado, sería un trámite fútil celebrar ambas vistas por separado. De lo contrario, el trámite administrativo se apartaría de los objetivos primordiales por los cuales se crearon las agencias administrativas.

Por las razones que anteceden, se revoca la Resolución del Tribunal de Circuito de Apelaciones y se devuelve a dicho foro para que adjudique las controversias en sus méritos.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Vinicio Almonte y Clemencia
Leduc, *et al.*

    **Peticionarios**

       v.

**Alejandrino Brito y/o
Estancias Reales, S.E.**

    Recurridos

|  |  |
|---|---|
| CC-2002-100 | |
| CC-2002-113 | Certiorari |
| CC-2002-114 | |
| **Cons.** | |

**SENTENCIA**

**San Juan, Puerto Rico a 2 de abril de 2002.**

      **Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia revocando la Resolución del Tribunal de Circuito de Apelaciones y se devuelve el caso a dicho foro para que adjudique las controversias en sus méritos.**

      **Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita. El Juez Asociado señor Rebollo López no intervino.**

                                      **Carmen E. Cruz Rivera**
                                        **Secretaria del Tribunal Supremo Interina**