# 2007 DTA 122

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

CCPR SERVICES, INC., H/N/C CINGULAR WIRELESS
Recurrente

v.

JUNTA REGLAMENTADORA DE TELECOMUNICACIONES DE PUERTO RICO
Recurrida

Núm. KLRA-2007-00288

San Juan, Puerto Rico, a 25 de octubre de 2007

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Aponte Hernández y Morales Rodríguez

Bajandas Vélez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos CCPR Services, Inc. h/n/c Cingular Wireless (Cingular o la recurrente) ▮ en el recurso de epígrafe. Nos solicita que revoquemos la "*Resolución y Orden*" emitida por la Junta Reglamentadora de Telecomunicaciones de Puerto Rico (la Junta o la recurrida) el 10 de enero de 2007 y notificada el 5 de febrero de igual año. Por medio de tal dictamen, la Junta declaró inválido un folleto titulado Aviso de Cláusula de Arbitraje Actualizada, Resolución de Disputas Mediante el Arbitraje Obligatorio enviado por la recurrente a sus clientes. Asimismo, ordenó a la recurrente abstenerse de enviar el aludido folleto a sus clientes en el futuro.

El 25 de abril de 2007, la recurrente presentó una Moción en Auxilio de Jurisdicción en la cual solicitó que ordenáramos la paralización de la mencionada Resolución y Orden. Ese día emitimos una resolución en la cual declaramos con lugar dicha solicitud.

Examinadas las comparecencias de las partes y el derecho aplicable, resolvemos confirmar la resolución recurrida y dejar sin efecto la paralización.

### I

Conforme surge de la "*Resolución y Orden*" recurrida, la Junta obtuvo conocimiento de que la recurrente

envió a sus clientes un folleto titulado Aviso de Cláusula de Arbitraje Actualizada, Resolución de Disputas Mediante el Arbitraje Obligatorio. En su dictamen, la Junta transcribió la siguiente disposición contenida en el mencionado folleto:

*"La mayoría de las inquietudes de los usuarios se pueden resolver rápidamente a su satisfacción llamando a nuestro servicio al cliente al 1-800-331-0500. En el caso poco probable de que el servicio al cliente no pueda resolver una queja a satisfacción del usuario (o si Cingular no puede resolver una disputa con el usuario luego de intentar resolverla de manera informal), Cingular y el usuario aceptan resolver tales disputas mediante arbitraje obligatorio o ante un tribunal que atienda causas de escaso monto, en lugar de recurrir a tribunales de competencia general."* ■

Consta de la resolución recurrida que el folleto objeto de la controversia establecía que la compañía celular y el cliente aceptaban someter a arbitraje todas las disputas y reclamos que surgieran entre ambos, incluyendo entre otros, los siguientes:

*"Los reclamos que se originen o estén relacionados con cualquier aspecto de la relación entre ambos, ya sea que surjan de disposiciones contractuales, actos ilícitos civiles, disposiciones legales, fraude, tergiversación o de cualquier otra figura jurídica;*

*Los reclamos que se presentaron antes de la celebración de este contrato o cualquier contrato previo (que incluyen, entre otros, reclamos relacionados con la publicidad);*

*Los reclamos que actualmente son el objeto de la demanda colectiva pretendida, en la cual el usuario no es participante de una clase certificada; y*

*Los reclamos que puedan surgir luego de la terminación de este Contrato[.]"* ■

Por otro lado, la Junta adujo que la Ley Núm. 213 de 12 de septiembre de 1996 le confirió jurisdicción primaria para revisar las adjudicaciones de una compañía de telecomunicaciones en torno a las querellas de los usuarios. A esos efectos, determinó que la recurrente, a través del mencionado folleto, obvió la jurisdicción primaria de la Junta en contravención a la citada Ley Núm. 213. Razonó que con ello se coartaban los derechos de los usuarios de acudir en revisión ante la Junta y les imponía la renuncia a participar en cualquier demanda de clase. ■

En vista de lo anteriormente esbozado, la Junta concluyó que el aludido folleto era improcedente y no tendría efecto para los usuarios de Cingular. Además, ordenó a Cingular abstenerse de enviar el folleto a sus clientes en el futuro, y a que notificara lo dispuesto en la *"Resolución y Orden"* a sus clientes dentro de un término que no excediera de 30 días. ■ Por último, le requirió a Cingular presentar una moción a los fines de informar el cumplimiento con lo ordenado.

Por no estar de acuerdo con lo así resuelto, el 22 de febrero de 2007, la recurrente solicitó a la Junta que reconsiderara su *"Resolución y Orden"*. En la misma arguyó que el dictamen recurrido no fue objeto de un procedimiento adjudicativo, reglamentario o investigativo de parte de la Junta, lo que la privó de su debido proceso de ley.

Respecto a los méritos de la decisión de la Junta, la recurrente alegó que lo resuelto por la Junta era contrario a la normativa desarrollada al amparo del Federal Arbitration Act que favorece el arbitraje como método para la solución de disputas. Adujo que con su proceder la Junta dejó sin efecto la referida cláusula de arbitraje, cuando la misma atiende asuntos fuera de la jurisdicción de ésta, tales como los daños contractuales, lo que constituye una actuación *ultra vires* de dicho organismo.

Aunque del recurso no se desprende la decisión de la Junta en torno a la moción de reconsideración, entendemos que el plazo dispuesto por la Ley de Procedimiento Administrativo Uniforme (LPAU) transcurrió sin que ésta se expresara al respecto.

Inconforme con dicha determinación, el 9 de abril de 2007, la recurrente presentó el recurso de revisión de epígrafe en el que señaló que: "*[l]a Junta erró al invalidar la cláusula de arbitraje contenida en el contrato de servicios entre Cingular y sus suscriptores.*"

Atendido el recurso, concedimos a la recurrida un plazo para que presentara su alegato de oposición.

Entretanto, el 25 de abril de 2007, la recurrente presentó una Moción en Auxilio de Jurisdicción, en la cual solicitó que ordenáramos la paralización de la "*Resolución y Orden*" emitida por la Junta. En Resolución dictada ese día, accedimos a lo solicitado.

Por su parte, la recurrida presentó su oposición el 29 de mayo de 2007.

Luego de varias incidencias procesales, el 17 de julio de 2007, la recurrente presentó Moción de AT&T Mobility Solicitando se Eliminen Nuevos Argumentos Presentados por la Junta y en Cumplimiento de Orden. Posteriormente, el 30 de agosto de 2007, la recurrida compareció mediante un escrito titulado "*Dúplica*" y el 17 de septiembre de 2007 presentó una moción en la que nos solicitó tomáramos conocimiento de cierta nueva jurisprudencia que alegadamente apoya la decisión recurrida.

Con el beneficio de las comparecencias de las partes, procedemos a resolver el recurso, no sin antes atender la moción de la AT&T Mobility en solicitud de que se eliminen los nuevos argumentos presentados por la Junta.

## II

Como es sabido, los funcionarios que presiden los procedimientos administrativos de naturaleza adjudicativa, al igual que los tribunales, están facultados para "*tomar conocimiento oficial de todo aquello que pudiera ser objeto de conocimiento judicial en los tribunales de justicia*". Véase, 3 L.P.R.A. sec. 2163 (d); Regla 11 (A) de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV, R. 11 (A). Al tenor de dicho principio, se puede tomar conocimiento oficial de aquellos hechos de conocimiento general en la jurisdicción, que puedan ser susceptibles de fácil verificación, y recurrir a fuentes cuya veracidad no puede ser razonablemente cuestionada. Se puede tomar conocimiento oficial o judicial a iniciativa propia o a petición de parte. *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 D.P.R. 42 (1993).

En el caso que nos ocupa, la Junta nos solicita que tomemos conocimiento de jurisprudencia reciente sobre las cláusulas de arbitraje. Se trata, pues, de unos documentos que son susceptibles de fácil verificación sobre fuentes cuya veracidad no puede ser razonablemente cuestionada. Además, su inclusión no es un factor decisivo para adjudicar la controversia planteada ante nos, la cual es de derecho. Por tanto, declaramos no ha lugar la Moción de AT&T Solicitando se Eliminen Nuevos Argumentos Presentados por la Junta y en Cumplimiento de Orden.

Pasemos a los méritos del recurso.

## III

Sabido es que la función revisora de las decisiones administrativas concedidas a los tribunales apelativos se reduce a determinar si la actuación de la agencia está dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T-JAC, Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70 (1999). De igual manera, los tribunales apelativos deben conceder gran deferencia a las decisiones administrativas en

consideración a la vasta experiencia y conocimiento especializado que ésta posee. *Rivera v. A & C Development Corp.*, 144 D.P.R. 450 (1997).

La Ley de Procedimiento Administrativo Uniforme (LPAU) en su sección 4.5 delimita el alcance de la revisión judicial de las decisiones administrativas. La misma dispone que las determinaciones de hechos sobre las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obre en el expediente administrativo. No obstante, las conclusiones de derecho serán revisables en todos sus aspectos. 3 L.P.R.A. sec. 2175. Así pues, un tribunal apelativo tiene el deber de estudiar la totalidad del expediente y examinar si existe evidencia que sostenga la decisión de la agencia o si por el contrario, es incompatible con ésta. *Assoc. Ins. Agencies, Inc. v. Com. de Seg. P.R.*, 144 D.P.R. 425 (1997). Si la interpretación es razonable, los tribunales, de ordinario, deben sostener el criterio de la agencia y no sustituirlo por el suyo. *Id.* Por el contrario, si luego de un estudio y análisis ponderado el tribunal descubre que se infringieron directamente valores constitucionales o la actuación administrativa fue arbitraria o irrazonable, el tribunal puede sustituir el criterio de la agencia por el suyo y revocar el dictamen administrativo. *Pérez Vélez v. VPH Motors Corp.*, 152 D.P.R. 475 (2000).

De este modo, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia recurrida. Al finalizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre los asuntos y/o materias que estuvieron ante su consideración. Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatutario o cuestiones de especialización administrativa.

Por otro lado, se ha reiterado que el debido proceso de ley cuenta con dos vertientes: la sustantiva y la procesal. *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 562 (1992). La dimensión sustantiva del debido proceso de ley, persigue salvaguardar los derechos fundamentales de la persona. En su vertiente procesal, el aludido precepto le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que en esencia sea justo, equitativo y de respeto a los individuos afectados. *Rodríguez Rodríguez v. E.L.A.*, supra, a la pág. 578; *López Vives v. Policía de Puerto Rico*, 118 D.P.R. 219, 231 (1987).

Para cumplir con el debido proceso de ley, en su dimensión procesal, la jurisprudencia ha establecido varios requisitos que deben ser satisfechos en todo procedimiento de índole adversativa. Son éstos, a saber: a) notificación adecuada del proceso; b) proceso ante un juzgador imparcial; c) oportunidad de ser oído; d) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; e) tener asistencia de abogado, y f) que la decisión se base en el expediente del caso. *López Santos v. Asociación de Taxis de Cayey*, 142 D.PR. 109, 113-114 (1996); *Feliciano Figueroa v. Toste Piñero*, 134 D.P.R. 909, 914-915 (1993).

En lo que respecta al debido proceso de ley en el ámbito administrativo, la LPAU establece en la sección 3.13 (b) que:

*"El funcionario que presida la vista dentro de un marco de relativa informalidad ofrecerá a todas las partes la extensión necesaria para una divulgación completa de todos los hechos y cuestiones en discusión, la oportunidad de responder, presentar evidencia y argumentar, conducir contrainterrogatorio y someter evidencia en refutación, excepto según haya sido restringida o limitada por las estipulaciones en la conferencia con antelación a la vista."*

Además, el profesor Demetrio Fernández Quiñones ha señalado que:

*"El requisito de ser oído implica el haber sido notificado de la violación que se imputa. Es imprescindible que se le conceda al querellado una oportunidad razonable para contestar y prepararse para su defensa.* **Su**

*defensa incluye el que se le permita presentar evidencia oral y documental, así como conocer la de su adversario y contrainterrogar a los testigos de la otra parte.* " (Énfasis nuestro)

Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. Ed., Bogotá, Forum, 2001, pág. 366.

Aunque en el ámbito administrativo el debido proceso de ley no tiene la rigidez que se le reconoce en la esfera penal, sí se requiere un proceso justo y equitativo que respete la dignidad de los individuos afectados. *Torres Acosta v. Junta Examinadora de Ingenieros, Arquitectos y Agrimensores del ELA*, **2004 J.T.S. 71**; *López Santos v. Asoc. de Taxis de Cayey*, supra, a la pág. 113; *López Vives v. Policía de Puerto Rico*, supra, a la pág. 230-231, "*...Después de todo, el debido proceso de ley encarna la esencia de nuestro sistema de justicia. Su prédica comprende los elevados principios y valores que reflejan nuestra vida en sociedad y el grado de civilización alcanzado....*" *López Santos v. Asoc. de Taxis de Cayey*, supra, a la pág. 113.

Finalmente, en *Hannah v. Larche*, 363 U.S. 420, 4 L. Ed. 2d, 1307, 80 S. Ct. 1502, el Tribunal Supremo federal enunció lo siguiente:

" '*Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when government agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used...* ". Cita a la pág. 1321, 4 L. E 2d.

En dicho caso también se indicó que, como norma general, el debido proceso de ley está conformado por las diferentes reglas del juego limpio ("*fair play*"). La interrogante de cuál es el debido proceso de ley que requiere un procedimiento en particular depende de varios factores, entre éstos, la naturaleza del alegado derecho envuelto; la naturaleza del procedimiento y el posible peso ("*burden*") en ese procedimiento. *Hannah v. Larche*, supra, a la pág. 1321, 4 L. Ed. 2d.

## IV

Cingular plantea primeramente en su recurso que fue privada de su debido proceso de ley, ya que, conforme al Reglamento de Práctica y Procedimiento General, aprobado por la Junta el 12 de septiembre de 1996 (Reglamento Núm. 5664), no fue objeto de un procedimiento adjudicativo, reglamentario o investigativo. Precisa que al tenor del referido Reglamento Núm. 5664, la Junta debió hacerle una notificación de una inspección, investigación o auditoría al amparo de el Capítulo 6; o presentar una querella acorde con el Capítulo 7; o emitir una orden de mostrar causa conforme a su Capítulo 11. Sostiene que antes de dejar sin efecto la cláusula de arbitraje, la Junta debió proveerle un procedimiento administrativo amparado en el debido proceso de ley. Por último, expone que la "*Resolución y Orden*" recurrida ni siquiera incluyó las advertencias sobre el derecho a solicitar la reconsideración y la revisión judicial requeridas por la Sec. 8.21(a) del Reglamento Núm. 5664 y la Sec. 3.14 de la L.P.A.U., 3 L.P.R.A. Sec. 2164.

La segunda contención de Cingular se dirige a los méritos de la "*Resolución y Orden*". Arguye que dicho organismo administrativo incidió al invalidar la cláusula de arbitraje incluida en el contrato de servicios entre Cingular y sus suscriptores. Sostiene que su primer contrato con sus suscritores incluia una cláusula de arbitraje como parte del manejo y solución de disputas con sus clientes. Asimismo, señala que contrario a lo determinado por la Junta, la cláusula de arbitraje revisada, la cual es objeto de la "*Resolución y Orden*", no limita la jurisdicción de la Junta como ésta concluyó. Por último, argumenta que al prohibir que Cingular utilice el acuerdo de arbitraje, la Junta está desfavoreciendo ese método de solución de disputas, lo cual es contrario al Federal Arbitration Act.

Atenderemos los aludidos asuntos en el mismo orden en que los hemos descrito.

Respecto al debido proceso de ley, precisa recordar que conforme a la doctrina expuesta no toda actuación de una agencia administrativa conlleva proveer las mismas garantías del debido proceso de ley. En efecto, nuestro Tribunal Supremo ha resuelto que a veces la etapa de la revisión judicial puede proveer una adecuada oportunidad para curar cualquier menoscabo del debido proceso de ley que el organismo administrativo haya provocado. En *Rodríguez v. Tribunal Superior,* 104 D.P.R. 335 (1975), el Tribunal Supremo expresó: *"... que la oportunidad adecuada de revisión administrativa puede curar la ausencia de notificación y vista previas. (Citas omitidas) El debido proceso de ley ofrece protección contra la arbitrariedad administrativa, pero no es molde rígido que prive de flexibilidad en toda instancia los procedimientos de administración."* Explicó el Alto Foro que:

*"... los incidentes procesales acaecidos subsiguientemente le concedieron la oportunidad [al recurrente] de subsanar la alegada falta de notificación y el derecho a una audiencia. El perjudicado tuvo la oportunidad de vista en la etapa de reconsideración. El interés público que informa el estatuto hubiera permitido el cumplimiento y acatamiento de la orden y luego la celebración de la vista. Los hechos del caso y la naturaleza del estatuto hacen viables las expresiones del tribunal. Ellas en manera alguna violan los ingredientes y principios del debido proceso de ley...."*.

Fernández Quiñones, *op cit.,* pág. 313.

Aunque es correcta la aseveración de Cingular de que conforme al Reglamento Núm. 5664, la Junta ha diseñado tres tipos de procedimientos con sus correspondientes vertientes del debido proceso de ley procesal, entendemos que la revisión judicial de autos puede curar o suplir cualquier posible omisión de esta índole de parte de ésta.

Fundamentamos esta determinación en que la controversia a ser dilucidada en este caso es una de estricto derecho. Por ello, entendemos que aunque la Junta no tomó en cuenta directamente la posición de Cingular antes de emitir su decisión, ▮ la recurrente no sufrió perjuicio sustancial por tal omisión. Advertimos que en su Moción de Reconsideración presentada el 22 de febrero de 2007 ante la Junta, Cingular se centró en discutir la corrección en derecho de su revisión de la cláusula de arbitraje incluida en el contrato con sus suscriptores. Asimismo surge de dicho escrito que la recurrente no solicitó una vista evidenciaria o adujo la existencia de hechos en controversia. Tanto así, que con la Declaración Jurada suscrita por el Sr. Neal S. Berinhout, en su representación, acreditó que: (1) Cingular desde el inicio de sus operaciones en enero de 2001 incluyó una cláusula de arbitraje en los términos y condiciones de servicio en los contratos; (2) que de tiempo en tiempo Cingular revisa los términos del contrato de servicio inalámbrico (Wireless Service Agreement); (3) que en diciembre de 2006, Cingular revisó su cláusula de arbitraje para hacer el arbitraje mucho más atractivo a sus clientes, y (4) que en las cláusulas de arbitraje Cingular nunca ha prohibido a sus clientes presentar querellas directamente a una agencia reguladora, incluida la Junta Reglamentadora de Telecomunicaciones de Puerto Rico. ▮

Por lo dicho, somos de opinión que la omisión de la Junta en proveerle algún tipo de debido proceso de ley a Cingular antes de emitir su *"Resolución y Orden"* no conlleva la nulidad de su actuación. Ello, por razón de que no existen controversias de hechos que dilucidar ante la Junta que hubieran requerido la celebración de una vista evidenciaria con todas las garantías del debido proceso de ley conforme dispone el Reglamento Núm. 5664 en su Capítulo 7 para las querellas. Tampoco era necesaria una notificación previa de dicho organismo administrativo, pues éste no tenía que iniciar una inspección, una investigación o una auditoría, según dispone el Capítulo 6 del Reglamento Núm. 5664. Por último, no se configuró una situación tal que ameritara sancionar a Cingular a los fines de requerir la emisión de una orden para mostrar causa, acorde con el Capítulo 11 del referido Reglamento.

El tratadista Bernard Schwartz en su libro *Administrative Law*, al abordar las excepciones a la celebración de una vista, señaló:

"*The normal procedure under the primary jurisdiction doctrine was not in order because the purport and intended effect of the regulations were crystal clear. That being the case, of what avail would be an evidentiary hearing before the agency? It is never presumed, **the Court declared, that Congress intended time to be wasted on hearings that are unnecessary to help decide the legal question at issue**. Inexorably to apply the primary jurisdiction doctrine in such a case, where only a question of law is presented, is to make that doctrine an empty refund whose observance is a wasteful futility.*" Op cit., 3<sup>ra</sup> ed. Schwartz, pág. 529.

Entendemos que el proceso de la revisión judicial ante este Tribunal, le brinda a la recurrente una oportunidad adecuada y razonable para hacer todos sus planteamientos respecto a la "*Resolución y Orden*" recurrida y rebatir los argumentos de la Junta respecto a la misma. Ello queda reforzado por las varias mociones y alegatos que la recurrente ha presentado ante nos en los que rebate la posición de la Junta.

Al tenor de lo expuesto, concluimos que en este caso no era necesario que la Junta celebrara una vista o le diera algún tipo de notificación a Cingular antes de emitir el dictamen recurrido, pues la controversia a dilucidar es una de estricto derecho.

Con relación a los méritos de la controversia, es la posición de la recurrente que siempre ha incluido una cláusula de arbitraje en sus contratos y que tal cláusula es válida por no contravenir la ley, la moral y el orden público. Aclara que la cláusula no tiene efecto alguno sobre la jurisdicción de la Junta, por lo que ésta no impide la presentación de querellas ante dicho foro. También señala que no la usará con el propósito de evitar que dicho foro asuma jurisdicción en casos de quejas de usuarios. Finalmente, arguye que el Federal Arbitration Act ocupa el campo.

Para atender dichos señalamientos, resulta necesario examinar la cláusula de arbitraje en controversia en su idioma original. En su parte pertinente ésta indica:

"*Arbitration Agreement:*

· **(1) Cingular and you agree to arbitrate all disputes and claims between** *us. This agreement to arbitrate is intended* **to be broadly interpreted**. *It includes, but is not limited to:*

· **claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other** *legal theory;*

· **claims that arose before this or any prior Agreement** *(including, but not limited to, claims relating to* **advertising***);*

· *claims that are currently the subject of purported class action litigation in which you are not a member of a certified class;* **and claims that may arise after the termination of this Agreement.**

*References to "Cingular," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us.*

**Notwithstanding the foregoing, either party may bring an individual action in small claims court. You agree that, by entering into this Agreement, you and Cingular are each waiving the right to a trial by jury or to participate in a class action**. *This Agreement evidences a transaction in interstate commerce, and thus the*

*Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this Agreement.*

*[...]"*. ■ (Énfasis nuestro)

Por otra parte, el Artículo II-6 de la Ley Núm. 213, *supra,* 27 L.P.R.A. Sec. 267e, dispone que *"[la] Junta tendrá jurisdicción primaria* **sobre todos los servicios de telecomunicaciones y sobre todas las personas que rindan estos servicios** en el Estado Libre Asociado de Puerto Rico y sobre toda persona con interés directo o indirecto en dichos servicios y compañías"*. (Énfasis nuestro) En particular, la Ley Núm. 213 le confiere poder a la Junta sobre:

*"(4) Cualquier persona cuyas acciones u omisiones resulten en perjuicio de las actividades, recursos o intereses sobre los cuales la Junta posee poderes de reglamentación, supervisión o vigilancia, incluyendo cualquier persona que utilice su control sobre servicios o compañías de telecomunicaciones de tal manera que resulte en dicho perjuicio."* 27 L.P.R.A. Sec. 276e (4).

De otro lado, el Artículo II-7 de dicha medida, 27 L.P.R.A. Sec. 267f, que trata sobre los poderes generales y deberes de la Junta dispone que ésta *"... adoptará, promulgará, enmendará y derogará aquellas reglas, órdenes y reglamentos según entienda sea necesario y propio para el ejercicio de sus facultades y el desempeño de sus deberes ...."*. 27 L.P.R.A. Sec. 267f(a). Además, la faculta para que asegure el cumplimiento de la Ley Núm. 213, *supra,* y sus reglamentos mediante órdenes de *"... cese de actividades o actos en violación de cualquier disposición de este capítulo, o los reglamentos de la Junta"*. También puede *"(5) [o]rdenar que se realice cualquier acto en cumplimiento de las disposiciones"* ■ de la ley y sus reglamentos. Finalmente, se le encomienda realizar todas sus acciones *"por el interés público y especialmente por la protección de los derechos de los consumidores"*. 27 L.P.R.A. Sec. 267f(f).

Al tenor de los poderes conferidos por la ley habilitadora, la Junta examinó el folleto enviado por la recurrente a sus clientes y concluyó que por medio del mismo se pretendía obviar su jurisdicción para revisar las objeciones de los clientes de Cingular. Razonó que la aludida cláusula de arbitraje choca con los propósitos y facultades conferidos por la Ley Núm. 213, *supra,* y por ello, concluyó que su efecto era el de coartar los derechos de los consumidores de acudir en revisión ante la Junta e *"... imponerles la renuncia a participar en cualquier clase de demanda colectiva"*. ■

Conforme a tal razonamiento, la Junta determinó que el folleto era improcedente y que no tenía efecto alguno en los consumidores de Cingular. Por ello, ordenó que ésta se abstuviera de enviar el mismo a sus clientes y que les notificara un aviso alertándolos de su *"... derecho a solicitar la revisión de la determinación de la Compañía [Cingular] por la Junta Reglamentadora de Telecomunicaciones de Puerto Rico."* ■

Evaluado dicho proceder, entendemos que la Junta no incidió en su interpretación de la cláusula de arbitraje revisada de Cingular.

De ésta se desprende que las partes acuerdan resolver **todas** sus disputas y reclamaciones por medio del arbitraje. Asimismo, surge que éstas convienen en que tal acuerdo sea interpretado **ampliamente**. No obstante, las partes precisan, sin que ello sea un límite, que las siguientes reclamaciones están incluidas en la cláusula de arbitraje, a saber: (1) las que surjan de o se relacionan **con cualquier aspecto de la relación** entre las partes, aunque estén fundamentadas o surjan del contrato, daños y perjuicios (tort), **estatuto** (statutes), fraude, falsa representación o cualquier otra teoría legal; (2) las que surgieren **antes** de la celebración del contrato o cualquier acuerdo previo, incluidas, pero sin limitarse, a reclamaciones relacionadas a la publicidad; (3) las que estén siendo sujetas a una presunta acción de clase, de la cual el consumidor no es miembro; y (4) las reclamaciones que puedan surgir **después** de la terminación del contrato.

Por otro lado, se aclara en la aludida cláusula de arbitraje que cualquier parte puede incoar una acción individual en una corte de pequeñas reclamaciones (small claims court). También se indica que al suscribir ese acuerdo cada parte renuncia al derecho a un juicio por jurado o a participar en una acción de clase. Finalmente, se aclara que el contrato evidencia una transacción en el comercio interestatal, por lo que el Federal Arbitration Act gobernará la interpretación y puesta en vigor (enforcement) de dicha cláusula de arbitraje, la cual sobrevivirá la terminación del acuerdo.

Al analizar dicha cláusula, advertimos que la misma cubre **todas** las disputas y reclamaciones entre las partes. Asimismo, notamos que las partes están obligadas a interpretarla ampliamente. De igual modo, éstas están obligadas a someter a arbitraje cualquier reclamación fundamentada en un estatuto. Ciertamente, tal lenguaje puede llevar al consumidor al convencimiento de que el **único** medio para dilucidar sus disputas con la recurrente es por el arbitraje. Con ello, se margina o soslaya por completo la consideración de que la Junta pueda ser un foro con jurisdicción disponible para dilucidar sus posibles reclamos contra Cingular.

Al advertir que toda reclamación o disputa que surja o esté fundamentado en un estatuto o cualquier teoría legal debe ser dirimida por el arbitraje, no podemos menos que concluir que ello incide directamente en los poderes y facultades conferidos por la Ley Núm. 213 a la Junta. La consecuencia de tal cláusula es, sin duda, sustraer de la jurisdicción de la Junta las disputas que por disposición de la propia Ley Núm. 213, *supra*, deben ser ventiladas en dicho foro.

A igual percepción o conclusión se llega cuando vemos que tanto las reclamaciones que surgieron antes del contrato o de uno anterior con Cingular, como las que son objeto de una acción de clase, también deben ventilarse por medio del arbitraje. El efecto de este texto es marginar la posibilidad de que un consumidor acuda a la Junta para obtener remedio. Tal conclusión queda reforzada por el lenguaje de la única excepción al arbitraje contemplada en la cláusula en cuestión, a saber: una acción individual en una corte de pequeñas reclamaciones (small claims court) las que no existen en nuestra jurisdicción. ■

Por último, Cingular aclara que no es su intención coartar el derecho de los consumidores a querellarse ante la Junta. Aunque ésta pueda ser la posición de la recurrente, un somero examen de la cláusula de arbitraje incluida en el folleto enviado a sus clientes hace evidente lo opuesto. ■ En efecto, de ello ser así, el contenido del folleto contradice su intención.

A tenor de lo expuesto, la Junta no erró al emitir su *"Resolución y Orden"*, por lo que procede confirmarla.

**V**

Por los fundamentos expuestos, se confirma la *"Resolución y Orden"* notificada el 5 de febrero de 2007 por la Junta Reglamentadora de Telecomunicaciones de Puerto Rico y se deja sin efecto la Resolución de paralización dictada el 25 de abril de 2007.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones